620 A.2d 1128

COMMONWEALTH of Pennsylvania, Appellee,

v.

Frederic Jacob JERMYN, Appellant.

Supreme Court of Pennsylvania.

Argued May 7, 1992.

Decided Feb. 19, 1993.

Reargument Denied April 15, 1993 **.

See also, 516 Pa. 460, 533 A.2d 74.

** Larsen and Montemuro, JJ., did not participate in the consideration or decision of this case.

Hubert C. Gilroy, Carlisle, for appellant.

J. Michael Eakin, Dist. Atty., Syndi L. Guido, Asst. Dist. Atty., for appellee.

Before NIX, C.J., and FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is a direct appeal from the order of the Cumberland County Court of Common Pleas—Criminal Division denying post-conviction relief in a death penalty case. This court has jurisdiction pursuant to 42 Pa.C.S. § 9546(d) (denial of post-conviction relief appealable directly to the Pennsylvania Supreme Court in a death penalty case).

Jermyn was convicted by a jury of first degree murder, arson and aggravated assault.[1] He was sentenced to death on the first degree murder conviction and to a concurrent term of ten to twenty years for arson, with the arson sentence to run consecutively with a five to ten year sentence on aggravated assault. Jermyn appealed the death sentence and this court affirmed, *Commonwealth v. Jermyn*, 516 Pa. 460, 533 A.2d 74 (1987). Jermyn then filed a motion under the Post–Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.* The PCRA court conducted a hearing on the motion, and at the conclusion of the hearing, denied the motion. This appeal followed.

The Post–Conviction Relief Act provides, in pertinent part:

(a) General rule.—To be eligible for relief under this subchapter, a person must plead and prove by a preponderance of the evidence all of the following:

\* \* \* \* \* \*

(2) That the conviction or sentence resulted from one or more of the following:

\* \* \* \* \* \*

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

\* \* \* \* \* \*

(v) A violation of the provisions of the Constitution, law or treaties of the United States which would require the granting of Federal habeas corpus relief to a State prisoner.[2]

1. Jermyn assaulted and strangled his mother in her bedroom then set her bed on fire, resulting in her death by asphyxiation.

2. 28 U.S.C. § 2241 provides, inter alia, that federal habeas relief is available to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States" 28 U.S.C. § 2241(c)(3). See also 28 U.S.C. § 2254 (State custody; remedies in federal courts).

Federal habeas corpus relief is available to state prisoners with respect to sentencing as well as matters related to guilt determination.

42 Pa.C.S. § 9543. With respect to ineffectiveness of counsel, this court has stated:

There are three elements to a valid claim of ineffective assistance. We inquire first whether the underlying claim is of arguable merit; that is, whether the disputed action or omission by counsel was of questionable legal soundness. If so, we ask whether counsel had any reasonable basis for the questionable action or omission which was designed to effectuate his client's interest. If he did, our inquiry ends. If not, the appellant will be granted relief if he also demonstrates that counsel's improper course of conduct worked to his prejudice, i.e., had an adverse effect upon the outcome of the proceeding.

*Commonwealth v. Davis,* 518 Pa. 77, 83, 541 A.2d 315, 318 (1988). In other words, in order for a claim of ineffectiveness of counsel to prevail, the petitioner must show (1) that counsel's conduct was of questionable legal soundness; (2) that he had no reasonable basis for the conduct; (3) that counsel's action had an adverse effect on the outcome of the proceeding.

Jermyn's first claim is that it was error for trial counsel to fail to ask questions of defendant at trial in such a manner as to allow him to testify in his own defense and deny the charges against him. The record indicates that Jermyn confessed to trial and pre-trial counsel his culpability in the crime charged and that trial counsel was aware of both confessions. At the PCRA hearing, Jermyn testified as follows:

Q. Do you recall, sir,—well, had you been given the opportunity to testify about what happened on January first of 1985, did you want to testify to the jury and tell the jury your version of the events?

A. More than likely, yes. Had I been given the opportunity to testify, I would have denied the allegations.

Believing that Jermyn would lie as to his culpability if given an opportunity, trial counsel asked Jermyn if he would like to

See *Parker v. Dugger,* 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1992) (Sentencing in a state death penalty case subject to federal habeas corpus relief as governed by 28 U.S.C. § 2254).

make a general statement to the jury.[3,4]

**3.** The Code of Professional Responsibility, then in effect, denounced the use of perjured testimony, Pa.Code of Prof. Resp. DR 7–102(A)(4), but provided no guidance in handling a situation such as this.

**4.** Compare Rules of Professional Conduct 3.3, effective April 1, 1988, which provide:

(a) A lawyer shall not knowingly:

\* \* \* \* \* \*

(4) offer evidence that the lawyer knows to be false....

\* \* \* \* \* \*

(c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

Comment to Rule 3.3 states:

**Perjury by a Criminal Defendant**

Whether an advocate for a criminally accused has the same duty of disclosure has been intensely debated. While it is agreed that the lawyer should seek to persuade the client to refrain from perjurious testimony, there has been dispute concerning the lawyer's duty when that persuasion fails. If the confrontation with the client occurs before trial, the lawyer ordinarily can withdraw. Withdrawal before trial may not be possible, however, either because trial is imminent, or because the confrontation with the client does not take place until the trial itself, or because no other counsel is available.

The most difficult situation, therefore, arises in a criminal case where the accused insists on testifying when the lawyer knows that the testimony is perjurious. The lawyer's effort to rectify the situation can increase the likelihood of the client's being convicted as well as opening the possibility of a prosecution for perjury. On the other hand, if the lawyer does not exercise control over the proof, the lawyer participates, although in a merely passive way, in deception of the court.

Three resolutions of this dilemma have been proposed. One is to permit the accused to testify by a narrative without guidance through the lawyer's questioning. This compromises both contending principles; it exempts the lawyer from the duty to disclose false evidence but subjects the client to an implicit disclosure of information imparted to counsel. Another suggested resolution, of relatively recent origin, is that the advocate be entirely excused from the duty to reveal perjury if the perjury is that of the client. This is a coherent solution but makes the advocate a knowing instrument of perjury.

The other resolution of the dilemma is that the lawyer must reveal the client's perjury if necessary to rectify the situation. A criminal accused has a right to the assistance of an advocate, a right to testify and a right of confidential communication with counsel. However, an accused should not have a right to assistance of counsel in committing perjury. Furthermore, an advocate has an obligation, not only in professional ethics but under the law as well, to avoid implication in the commission of perjury or other falsification of evidence. See Rule 1.2(d).

Counsel's treatment of the problem was reasonable, for while he was obligated to defer to his client's insistence on testifying, he was also obligated not to participate in the lie that he believed his client would state. The impact of counsel's conduct, thus, was to impede Jermyn's ability to lie to the jury. But Jermyn's ability to lie to the jury is not, of course, protected, and counsel cannot be ineffective for failing to promote it.[5] This claim is without merit because counsel acted reasonably within the constraints of ethical requirements.

Next, Jermyn claims that appellate counsel was ineffective in failing to file a petition for writ of certiorari to the United States Supreme Court on the issue of whether arson, which was the means utilized to commit the murder, may constitute an aggravating circumstance which would support a death verdict.

In Jermyn's direct appeal to this court he raised the question of whether it was error to allow the jury to consider arson endangering persons, 18 Pa.C.S. § 3301(a)(1), an aggravating circumstance for purposes of application of the death penalty statute. We held that it was not error to permit the jury to use arson endangering persons as an aggravating circumstance. *Com. v. Jermyn,* 516 Pa. at 484–86, 533 A.2d at 85–86. Jermyn now attempts to relitigate this issue by couching it in

5. The United States Supreme Court in *Nix v. Whiteside,* 475 U.S. 157, 173, 106 S.Ct. 988, 997, 89 L.Ed.2d 123, 138 (1986), stated:

Whatever the scope of a constitutional right to testify, it is elementary that such a right does not extend to testifying *falsely.* In *Harris v. New York,* [401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971)], we assumed the right of an accused to testify "in his own defense, or to refuse to do so" and went on to hold:

"[T]hat privilege cannot be construed to include the right to commit perjury.... Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully...."

[Emphasis in original.] In *Harris* we held the defendant could be impeached by prior contrary statements which had been ruled inadmissible under *Miranda v. Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966). *Harris* and other cases make it crystal clear that there is no right whatever—constitutional or otherwise—for a defendant to use false evidence....

The paucity of authority on the subject of any such "right" may be explained by the fact that such a notion has never been responsibly advanced; the right to counsel includes no right to have a lawyer who will cooperate with planned perjury.

terms of an allegation that it was ineffective for counsel to fail to petition for certiorari once we had denied his claim.

In order to prevail on this claim, Jermyn must show, inter alia, that counsel's conduct had no reasonable basis. Counsel testified at the PCRA hearing that he had consulted with other legal counsel as to the arson/aggravating circumstance issue and decided that this court's decision did not conflict with federal law or the law of other states. Moreover, Jermyn has not cited conflicting decisions from other states or from the federal circuits. We conclude, therefore, that counsel's failure to file a writ of certiorari was reasonable and that Jermyn's assertion of ineffectiveness is without merit.

Finally, Jermyn asserts that counsel was ineffective per se for failing to request "life qualification questioning" during voir dire; that appellate counsel was ineffective in failing to properly frame the issue on direct appeal (failed to cite legal authority from other jurisdictions and failed to obtain a transcript of the voir dire); and that appellate counsel was ineffective for failing to file a petition for writ of certiorari with the United States Supreme Court on the "life qualification" issue.

Life qualification questioning is merely questioning of each prospective juror to ensure that each juror is willing and able to award a sentence of life imprisonment in an appropriate case and that the juror would not insist on a death sentence in all cases of first degree murder.

Had this court been furnished with a transcript of the voir dire proceedings in this case, it would have read the following questioning which was conducted by the trial court:

Q. The Commonwealth in this case is seeking to convict Mr. Jermyn of murder in the first degree. If the jury is unanimous in a verdict of murder of the first degree, the jury would then be asked to deliberate a second time to decide whether or not to impose a penalty of death or life imprisonment. In order to serve on this jury it is a requirement of the law that you do not have any scruples that would prevent or substantially impair the performance of your duties as a juror in accordance with the instructions

provided to you by this Court and your oath as a juror. My question is, do you have any moral, philosophical or religious scruples that would prevent you from imposing the death penalty in this case if under the law and the facts as you found them the circumstances warranted it?

A. (Assumed answer no).

Q. Are you telling me that under the appropriate circumstances you could vote for the death penalty in this case?

A. (Assumed answer yes).

This questioning, which "death qualifies" a jury, is designed to ensure that the jury will be able to follow the requirements of the law in imposing a death sentence in an appropriate case. Neither the transcript of the voir dire nor the citation of cases from our sister states significantly adds to what we had previously considered on direct appeal. As we stated on direct appeal:

> The purpose of voir dire is to empanel a fair and impartial jury which will apply the law in accordance with the instructions of the trial court. Both general and specific questions are directed to prospective jurors under oath in an effort to ferret out evidence of bias and prejudice. Those veniremen who express an inability to render a fair and impartial decision are subject to a challenge for cause. In addition, those venirepersons thought to be unfavorably disposed to the positions of the respective parties may be removed through the exercise of peremptory challenges. The mere fact that counsel may not have posed the specific question as to whether a prospective juror would vote for a sentence of life imprisonment in an appropriate case does not justify the conclusion that counsel failed to assure that a fair and impartial jury was selected. Such a talismanic requirement would clearly place form above substance.

516 Pa. at 488, 533 A.2d at 87. Thus, the underlying claim has been finally litigated, and, as in the previous assertion of error, Jermyn attempts to avoid the statutory bar to reconsideration by couching the issue in terms of failure of prior counsel to petition for writ of certiorari.

██ Once again, a threshold question is whether counsel acted reasonably in failing to file a writ of certiorari on the issue of whether a jury must be life qualified. Although Jermyn cites law from other states which gives a defendant a right to life qualify a jury, but does not require that process, he cites no federal or Pennsylvania law requiring life qualification. In fact, in *Commonwealth v. Tilley*, 528 Pa. 125, 151, 595 A.2d 575, 587–88 (1991) this court cited its determination in Jermyn's direct appeal that life qualification of a jury is not required and stated, "trial counsel cannot be found ineffective for electing not to raise this meritless claim." We conclude, therefore, that counsel's failure to petition for writ of certiorari on this issue was reasonable, and Jermyn's claim of ineffectiveness is without merit.

Affirmed.

ZAPPALA, J., concurs in the result.

LARSEN and McDERMOTT, JJ., did not participate in the consideration or decision of this case.