652 A.2d 821

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Frederic Jacob JERMYN, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 27, 1994.

Decided Jan. 18, 1995.

Hubert X. Gilroy, Carlisle, for appellant.

J. Michael Eakin, Dist. Atty., Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is the appeal of Frederic Jacob Jermyn (Appellant) from the Order of the Court of Common Pleas of Cumberland County denying his petition to stay execution scheduled for the week of December 6, 1993, on the warrant of the acting Governor of Pennsylvania.[1]

On August 16, 1985, following a jury trial, Appellant was convicted of murder of the first degree, arson, and aggravated assault. The convictions arose from the murder of Appellant's mother, Mildred Jermyn, on December 31, 1984. Following a sentencing hearing on August 17, 1985, the jury returned a verdict of death. Post-verdict motions were denied and on April 15, 1986, Appellant was sentenced to death for the first degree murder, to a concurrent ten to twenty years imprisonment for the arson conviction, and to a five to ten year prison term for the aggravated assault to run consecutive to the arson sentence and concurrent with the death sentence. We

---

1. . The Supreme Court has jurisdiction over direct appeals from the Courts of Common Pleas in all cases involving the imposition of the death sentence pursuant to 42 Pa.C.S. § 722(4).

affirmed Appellant's conviction and death sentence at *Commonwealth v. Jermyn,* 516 Pa. 460, 533 A.2d 74 (1987).

Subsequently, Appellant filed a motion under the Post–Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.* After a hearing, the Court of Common Pleas of Cumberland County dismissed the PCRA petition on July 11, 1991. We affirmed the denial at *Commonwealth v. Jermyn,* 533 Pa. 194, 620 A.2d 1128 (1993).

On July 14, 1993, Appellant filed a Petition for Writ of Certiorari with the Supreme Court of the United States. An execution warrant was issued for Appellant on September 21, 1993, which scheduled Appellant's execution for the week of December 6, 1993.

In response, Appellant filed a plethora of motions in an attempt to postpone his execution. On November 10, 1993, alleging insanity and mental incompetence, Appellant filed an "Application for Court Determination of Defendant's Competency" to determine whether Appellant was competent to be executed. Appellant also filed, on November 19, 1993, an application with the Pennsylvania Board of Pardons. On December 1, 1993, Appellant filed a Petition for Stay of Execution with the United States Supreme Court.

Following a competency hearing on November 30 and December 1, 1993, before the Court of Common Pleas of Cumberland County, the court determined that Appellant comprehends the reasons for and the implications of his death sentence. The court also found Appellant to be capable of participating and assisting in his defense in a meaningful way.

Consequently, on December 2, 1993, the Court of Common Pleas of Cumberland County denied Appellant's petition for stay of execution, and Appellant immediately filed a Notice of Appeal with the Cumberland County Clerk of Courts. Also on December 2, 1993, Appellant filed a Petition for Writ of Habeas Corpus with the United States District Court for the Middle District of Pennsylvania.

On December 3, 1993, the District Court stayed Appellant's execution. Then, on December 16, 1993, the District Court

dismissed the habeas corpus petition for lack of exhaustion of state remedies, citing the pendency of the appeal of the competency hearing to this Court. On January 10, 1994, the Supreme Court of the United States denied Appellant's Petition for Writ of Certiorari.

Appellant now comes before us in an effort to stay his execution on the grounds of alleged incompetency.

It is well established that the imposition of the death penalty does not violate either the United States or Pennsylvania constitutional prohibitions against cruel and unusual punishment. *Commonwealth v. Edwards*, 521 Pa. 134, 555 A.2d 818 (1989). The validity of that principle is not implicated in these proceedings.

The Constitution of the United States, however, does forbid the practice of executing individuals who are determined to be insane. *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). In *Wainwright*, a Florida inmate had been sentenced to death and was awaiting execution. There, the Court concluded that it was abhorrent to execute one "whose mental illness prevents him from comprehending the reasons for the penalty or its implications." *Id.* 477 U.S. at 417, 106 S.Ct. at 2606.

Consistent with this view, we have ruled that no insane person can be tried, sentenced or executed. *Commonwealth v. Moon*, 383 Pa. 18, 117 A.2d 96 (1955); *Commonwealth v. Patskin*, 375 Pa. 368, 100 A.2d 472 (1953); *Commonwealth ex rel. Smith v. Ashe*, 364 Pa. 93, 71 A.2d 107 (1950). Not surprising, the practice of staying executions of the insane dates back to our English common law. In *Moon*, we said, quoting Blackstone's Commentaries:

> If, after he [the defendant] be tried and found guilty, he loses his senses before judgment, judgment shall not be pronounced; and if after judgment he becomes of nonsane memory, execution shall be stayed; for peradventure, says the humanity of English law, had the prisoner been of sound

memory, he might have alleged something in stay of judgment or execution.

*Commonwealth v. Moon*, 383 Pa. at 23, 117 A.2d at 99–100.

 Appellant presents several issues for our review, all of which depend upon the primary issue of whether the lower court applied the appropriate standard in determining that Appellant was competent to be executed.

The lower court, relying on *Wainwright*, outlined the following standard for determining Appellant's competency to be executed: "The issue to be decided at the hearing is whether any current mental illness of defendant now prevents him from comprehending the reasons for the death penalty or its implications." (Trial Court Opinion p. 5).

Additionally, pursuant to Appellant's request, prior to the hearing, the trial court amended the issue to be determined to include a determination of whether any current mental illness of Appellant now prevents him from participating and assisting in his defense.

Appellant now argues that the lower court applied the wrong standard in determining his competency and that it should have applied the competency standard as set forth in Pennsylvania's Mental Health Procedures Act (the Act), 50 P.S. § 7101 *et seq.*, to determine whether Appellant was competent to be executed.

Under Section 402 of the Act, incompetency is defined as follows:

[w]henever a person who has been charged with a crime is found to be substantially unable to understand the nature or object of the proceedings against him or to *participate and assist* in his defense, he shall be *deemed incompetent to be tried, convicted or sentenced* so long as such incapacity continues.

50 P.S. § 7402(a) (emphasis added).

In support of his argument, Appellant cites our decision in *Commonwealth v. Moon*, 383 Pa. 18, 117 A.2d 96 (1955), as the controlling case in Pennsylvania regarding the applicable stan-

dards to be used in determining the mental competency of a defendant who is to be executed.

In *Moon,* a jury convicted the defendant and imposed the death penalty. The question of the defendant's competency arose while post-trial motions were pending. During an evidentiary hearing, the lower court applied the Mental Health Act of 1951 to determine whether the defendant was competent to continue the proceedings against him. Subsequently, we upheld that application of the Mental Health Act of 1951 at the competency hearings.

In the case before us, the lower court, in its memorandum opinion dated November 16, 1993, correctly distinguished *Moon* since the defendant in *Moon* and Appellant are at two different stages of their proceedings. Section 402 of the Act is plainly worded. It applies only during the trial, conviction and imposition of sentence. Here, Appellant has already been tried, convicted, sentenced, exhausted his direct and collateral state appeals, and a death warrant has been issued. The Mental Health Procedures Act was inapplicable to this proceeding, and therefore, the lower court was not bound to consider the Act's additional provisions in determining whether Appellant was competent to suffer execution.

However, as a matter of judicial discretion, and in order to avoid further delay, the lower court expanded the issue to be decided during the evidentiary hearing to include a determination of whether Appellant has a mental illness which prevents him from participating or assisting in his own defense.

While the application of this consideration is not necessary to determining Appellant's competency to be executed, we cannot fault the trial court for taking testimony concerning this issue and basing its finding of competency on such factors. We are satisfied that the lower court's findings that Appellant comprehends the reasons for the death penalty and its implications are based on sufficient evidence, therefore, we affirm

the lower court's denial of Appellant's petition to stay execution.[2]

MONTEMURO, J., is sitting by designation.

2. Pursuant to our holding that the Mental Health Procedures Act is inapplicable to this proceeding, it is unnecessary for us to address the merits of the other issues raised by Appellant which attack the fact that the trial court did not apply the hearing procedures as outlined in the Mental Health Procedures Act and abused its discretion in reviewing the evidence as it applied to the Act.