943 A.2d 230

**COMMONWEALTH of Pennsylvania, Appellant**

**v.**

**George E. BANKS, Appellee**

**In re George E. Banks,**

**Appeal of Mary Yelland, as Next Friend.**

**Commonwealth of Pennsylvania, Appellant**

**v.**

**George E. Banks, Appellee (Two Cases).**

Supreme Court of Pennsylvania.

Submitted Feb. 13, 2007.

Decided Dec. 28, 2007.

---

**2.** *Tragarz v. Keene Corp.,* 980 F.2d 411 (7th Cir.1992).

Scott Charles Gartley, David W. Lupas, Luzerne County Dist. Attorney's Office, Wilkes-Barre, PA, Jennifer Ann Buck, Amy Zapp, Jonelle Harter Eshbach, Office of Atty. Gen., Harrisburg, PA, for the Com. of PA.

Billy Horatio Nolas, Matthew C. Lawry, Defender Ass'n of Philadelphia, Albert Joseph Flora, Luzerne County Public Defender's Office, Wilkes-Barre, for George E. Banks.

Stuart Brian Lev, Billy Horatio Nolas, Matthew C. Lawry, Maureen Kearney Rowley, Defender Ass'n of Philadelphia, William Ruzzo, Albert Joseph Flora, Jr., Luzerne County Public Defender's Office, Wilkes-Barre, for Mary Yelland.

## OPINION

PER CURIAM.

Before us is a challenge by the Commonwealth to the findings and conclusions of law of the Court of Common Pleas

of Luzerne County ("trial court"), which this Court, after assuming plenary jurisdiction over this matter, directed to determine whether appellee [1] George E. Banks is competent to be executed. For the reasons that follow, the trial court is directed to conduct a new and expeditious competency hearing at which the Commonwealth can present opinion testimony from a qualified expert of its choosing.

In June 1983, a jury convicted appellee of twelve counts of first-degree murder, one count of third-degree murder, and related offenses in connection with his September 25, 1982 early morning killing spree in and near Wilkes–Barre, Luzerne County.[2] After rejecting his insanity defense, the jury imposed the death sentence for each of appellee's twelve first-degree murder convictions. This Court affirmed appellee's convictions and sentences on direct appeal, *Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1 (1987), and unanimously denied post-conviction relief, *Commonwealth v. Banks*, 540 Pa. 143, 656 A.2d 467 (1995). Appellee's federal *habeas corpus* petition was ultimately denied in the second of two decisions of the U.S. Supreme Court. *Beard v. Banks*, 542 U.S. 406, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004). On October 5, 2004, Governor Edward G. Rendell signed a warrant for appellee's execution, scheduling it for December 2, 2004.

On November 19, 2004, appellee's mother, Mary Yelland, filed a "next friend" petition on his behalf, seeking a stay of execution and alleging, *inter alia*, that appellee was incompetent to be executed under *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (holding that Eighth Amendment prohibits States from executing defendants determined to be insane). The trial court denied the petition for want of jurisdiction, finding that it was time-barred under the PCRA. Yelland appealed to this Court. In an order issued

1. Although our review of the trial court's findings and conclusions does not constitute a traditional "appeal" as we assumed—and still retain—plenary jurisdiction, Banks has nonetheless been designated the "appellee" because the trial court ruled in his favor.

2. The majority of the thirteen victims that appellee shot to death with his assault rifle were children, all but one of whom appellee had fathered, and most of the others were the children's various mothers.

on December 1, 2004, we assumed plenary jurisdiction under 42 Pa.C.S. § 726,[3] stayed the warrant of execution, and directed the trial court to "hold a competency hearing expeditiously in accordance with *Ford v. Wainwright.*" Reproduced Record ("R.R.") at 20a. Because competency can be contested factually, and because there could be questions of credibility, this Court, while retaining jurisdiction, essentially drafted the trial judge to act as a master. On December 3, 2004, we further directed the trial court to determine whether appellee possessed the mental capacity to initiate clemency proceedings or to designate someone to initiate them on his behalf.

On December 17, 2004, the trial court issued an order directing the Department of Corrections ("DOC") to produce all records in its possession related to appellee. The docket sheet reflects no progress of the case until February 17, 2005, when the trial court held a status conference at which the court merely scheduled a telephone conference for April 13, 2005. The April telephone conference primarily addressed certain documents in the possession of the DOC that the Commonwealth had asserted were protected by attorney/client privilege. After agreeing to provide the parties with forty-five more days to brief the issue, the court proceeded to address the issue of the yet-to-be scheduled examination of appellee by forensic psychiatrist Timothy Michals, M.D., the Commonwealth's psychiatric expert. It was in this context that defense counsel asserted "a right to be present" during the Commonwealth's psychiatric examination as well as "the right to have a mental health person present." Notes of Testimony ("N.T."), 4/13/05, at 17. Neither counsel for the Commonwealth nor the court commented upon the supposed "rights" asserted by defense counsel. Instead, the court merely direct-

3. Section 726 of the Judicial Code provides as follows:
   Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or magisterial district judge of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done. 42 Pa.C.S. § 726.

ed the parties to schedule the examination within ten days. *See id.* at 18.

Unfortunately, the examination was not scheduled as the court directed. Accordingly, on July 25, 2005, this Court *sua sponte* entered a *per curiam* order directing the trial court to hold the hearing on or before October 3, 2005. The trial court ultimately scheduled the hearing for October 3rd, the last day permissible under our order. The hearing, however, did not take place as scheduled, apparently because appellee was supposedly suffering from a contagious skin condition. Because it appeared that the hearing had been postponed indefinitely, this Court entered yet another *sua sponte* order on October 4, 2005, directing the trial court to determine the extent of the skin condition and to reschedule the competency hearing.

The trial court heard testimony from appellee's treating physician, Dr. Felipe Arias, on October 11th. At that hearing, Dr. Arias testified that appellee had been treated in the prison infirmary for an undiagnosed skin condition for the past several months but that his condition had recently improved such that appellee could attend a competency hearing without posing a health risk to anyone present. N.T., 10/11/05, at 32. Accordingly, the trial court rescheduled the competency hearing for Monday, October 24, 2005.

On Friday, October 21st, defense counsel submitted to the trial court a physician's affidavit recommending that appellee not be transported to the competency hearing scheduled for the following Monday because the exact nature of his skin condition supposedly remained undetermined. The parties met as scheduled on Monday, October 24th. Instead of holding the scheduled hearing, the court indicated that, based on the physician's affidavit, the competency hearing would be continued until it could be held at SCI–Graterford. After stating that it would then proceed to conduct a telephone conference with the warden of SCI–Graterford to discuss the logistics of holding the hearing there, the court asked the parties whether they wished to place anything else on the record. In response, defense counsel informed the court that,

on September 23rd, Dr. Michals "went and saw [sic] Mr. Banks without any notice to any of us, no notice to defense counsel, no opportunity for us to be there, no opportunity for us to either observe or advise Mr. Banks in any way or participate in any way." N.T., 10/24/05, at 4–5. Defense counsel further advised the court that he anticipated that he would be requesting that Dr. Michals be stricken as a witness, to which the court responded simply, "Well, file your motion, I'll be happy to respond to it." *Id.* at 5. Finally, the court proceeded to the telephone conference, during which it contacted the warden of SCI–Graterford and secured his assurances that the competency hearing could be held there for four days beginning January 31, 2006.[4]

On November 14, 2005, to guard against any further inexplicable delay in this case while reposed in our original jurisdiction, this Court entered yet another *sua sponte* order directing the trial court to, no later than February 28, 2006, "render its decision on the issues it was directed to consider in this Court's prior orders of December 1, 2004 and December 3, 2004." R.R. at 59a. In the interim, on December 19, 2005, the trial court held a hearing on appellee's motion—a motion never authorized by this Court—to preclude Dr. Michals from testifying at the competency hearing based on defense counsel's absence at Dr. Michals' brief contact with appellee on September 23rd. Throughout the hearing, defense counsel alleged that the trial court had previously "ordered" that defense counsel be present during any contact between Dr. Michals and appellee.[5] In reality, as the Commonwealth notes

4. Given the absence of any discussion on the record as to the timing of the scheduled competency hearing, it is unclear why the hearing could not be held until more than three months later.

5. *See* N.T., 12/19/05, at 4–5 ("Our position is the Commonwealth exceeded the scope of Your Honor's Order by a shocking degree ... and, therefore, Your Honor should exclude the testimony of Dr. Michals ...."); *id.* at 8 ("Your Honor, what you held in this specific case, that any contact with Mr. Banks would be on the up and up, with defense counsel present, with notice to the defense so that a defense counsel would be there. And the reason why you ordered that is not anything unique to this case."); *id.* ("Mr. Banks is blatantly psychotic, but he's still entitled to counsel and to advice from counsel, and that's what you

in its Brief to this Court, the trial court never entered such an order.[6] In fact, prior to Dr. Michals' contact with appellee on September 23rd, the court gave no record indication whatsoever that the Commonwealth was barred from arranging for such contact outside the presence of defense counsel. *See* N.T., 4/13/05, at 17–18 (making no comment upon defense counsel's assertion at the April 2005 telephone conference of "a right to be present" and "the right to have a mental health person present"). Moreover, the docket sheet does not reflect the existence of such an order. As explained below, there is simply no support, either in case law or in a statute, for the "rights" asserted by defense counsel. More importantly, this Court, the court exercising original jurisdiction, did not impose any such restriction upon the Commonwealth's expert when we ordered the trial court to simply hold an expeditious

ordered."); *id.* at 11 (alleging that the September 23rd contact was "arranged secretly behind the scenes, behind everybody's back in violation of Your Honor's expressed Order in' this case"); *id.* at 14 ("And in this case, that's what you said. That was Your Honor's order. Tell the defense lawyers, let them be there, do it all on the up and up."); *id.* at 17 ("And what you have here is a violation of the statute[ ] [and] case law ... and a violation of your own Order in this case, which your Honor said should be done in the context of this litigation."); *id.* at 36–37 ("But I go back to your initial Order, which sets up the first psychiatric examination which provides that the defendant had the right to have counsel present.").

6. As evidence of a "directive" made to the parties prior to appellee's competency hearing, Mr. Chief Justice Cappy in his Dissenting Opinion cites merely to an observation made in the trial court's opinion as to a supposed understanding between the parties. Dissenting Op. at 231 ("The trial court specifically found[ ] [ ] that the parties 'understood that any contact with Banks by the Commonwealth would be in the presence of defense counsel or other representatives of the defense.'" (quoting Trial Ct. Op. at 2)). Nevertheless, as detailed above, the record contains no evidence that the trial court ever **ordered**—either verbally or in writing—that defense counsel be present during examinations of appellee.

In this regard, the Chief Justice further posits that "the Commonwealth never proceeded on the theory that it was uninformed of the trial court's directive [sic]." *Id.* To the contrary, as soon as it was able to determine that the docket sheet was inconsistent with defense counsel's repeated allegations at the December 19th hearing, the Commonwealth did bring the non-existence of the "order" to the attention of the trial court. *See Commonwealth's Motion for Reconsideration*, R.R. at 130a & n. 2.

competency hearing. In any event, this Court is not bound by any "understanding" of the parties, or even by any "order" of the lower tribunal acting under **our** control.[7]

Nevertheless, at the conclusion of the hearing held on December 19th, the trial court granted appellee's motion to outright preclude Dr. Michals from testifying at the scheduled competency hearing. The court further ruled that it would "allow the Commonwealth, though to re-hire a new expert if they can prior to the hearing, assuming that the terms and conditions of my original order [sic] are met with and that defense counsel be present at all future interviews of Mr. Banks and/or any people from the DOC." N.T., 12/19/05, at 39. In precluding Dr. Michals from testifying at the scheduled competency hearing, the trial court stated that it "relied on relevant principles of law, and the parties' own pre-hearing recognition that this [c]ourt expected contacts with Banks by Commonwealth experts to be only in the presence of the defense." Trial Ct. Op., 2/27/06, at 3. The only authority cited by the court is *Ford v. Wainwright, supra,* which, as explained below, undermines rather than supports the notion of a counsel-presence requirement.

The Commonwealth subsequently filed a Motion for Reconsideration, arguing that there was, in fact, "no 'original order' which could have been violated." R.R. at 130a. The trial court denied the motion, depriving the Commonwealth of its

---

7. This Court has directed expeditious hearings in related contexts. *See, e.g., Commonwealth v. Saranchak,* 570 Pa. 521, 810 A.2d 1197, 1198 (2002) (proceeding concerning competency to waive rights conducted, upon order of this Court, and matter proceeded to final determination, within twelve-day timeframe). The unauthorized delay here is simply inexplicable.

There is not currently in place a specific procedure for the timely handling of *Ford v. Wainwright* claims—either under the PCRA or other legislation, or under this Court's rules. We had hoped that this case might be the proper vehicle for developing such a procedure, but the warrant for appellee's execution has expired and the parties do not address the propriety of the procedure employed here. Therefore, we will refer the matter to the Appellate Court Procedural Rules Committee and the Criminal Procedural Rules Committee to recommend a framework for the filing and disposition of motions for stay of execution based on a defendant's purported incompetence to be executed.

only psychiatric expert six weeks before the scheduled competency hearing.

After retaining a new expert, forensic psychiatrist Michael Welner, M.D., the Commonwealth notified the DOC that Dr. Welner would need to examine appellee and interview the DOC personnel whom Dr. Michals had interviewed. R.R. at 157a. The DOC responded that it would allow Dr. Welner to examine appellee but would deny the Commonwealth's request for re-interviews of DOC personnel. *Id.* Thereafter, the Commonwealth promptly filed a Motion to Compel the re-interviews. The trial court granted the Commonwealth's motion but required that the interviews be transcribed and conducted in the presence of defense counsel. The Commonwealth twice noted its objection to the conditions that the court imposed. N.T., 1/18/06, at 17–18.

Understandably, Dr. Welner declined to conduct the interviews under the conditions imposed by the trial court. When asked "what impact those conditions that were imposed would have had on [his] ability to conduct a candid interview," Dr. Welner responded as follows:

Well, it would have a chilling effect. . . .

[P]eople have to feel that they are communicating with someone who records their ideas in a candid way, but they have to feel that they are not caught up in some sort of deposition, adversarial process.

You know, I'm a psychiatrist. I'm not an attorney. If you want to conduct a deposition, you don't need a psychiatrist for that. But any kind of psychiatrist interviewing of witnesses or examinees is done in a way that more resembles a doctor's office and less resembles a deposition.

When people feel that there are people monitoring them, and this is in my professional experience, they are chilled and they are silent. And if the purpose is to elicit candor and openness, then it defeats the purpose and it renders it an ineffectual exercise.

N.T., 1/31/06, at 381–82. Accordingly, the Commonwealth requested "that in light of Dr. Welner's testimony, the [c]ourt

reconsider the Commonwealth's request and allow the record to remain open so that he may prepare and offer a complete testimony for purposes of this hearing." *Id.* at 407. The trial court denied the request.

Thereafter, the Commonwealth sought "interlocutory review" of the trial court's pre-hearing evidentiary rulings and requested a stay of the competency hearing. The trial court declined to certify the "appeal" and denied the stay request, and the Commonwealth filed an emergency motion therefrom in this Court. We denied the stay request but did not rule on the Commonwealth's interlocutory "appeals." The competency hearing was finally held on January 30, 2006, at which appellee presented three expert witnesses who opined that he lacked a rational and factual understanding of his death sentences and the reasons for and implications of the same. The Commonwealth, given the trial court's restrictions, could produce no evidence.

On February 27, 2006, the trial court issued its findings of fact and conclusions of law. Citing the testimony of the three defense experts who testified at the hearing, appellee's DOC records, and other hearing exhibits, the court found that appellee was incompetent under *Ford v. Wainwright*. The trial court further found that appellee "lacks the overall capacity for general competency, and thus is incapable of rationally participating in the legal process or making rational, intelligent decisions such as the decision whether to seek clemency." Trial Ct. Op., 2/27/06, at 21. In explaining its findings, the trial court repeatedly noted that the evidence presented by the defense went uncontradicted, *see id.* at 8, 10, 11, 12, and ultimately found that "[t]he Commonwealth did not act with the necessary diligence" in preparing for the hearing, *id.* The propriety of the trial court's competency ruling is now before this Court.

In *Ford v. Wainwright,* the U.S. Supreme Court held that the Eighth Amendment restricts the States from executing a defendant determined to be insane. In so holding, however, the Court explicitly "le[ft] to the State[s] the task of

developing appropriate ways to enforce th[at] constitutional restriction." *Ford,* 477 U.S. at 416, 106 S.Ct. 2595; *see also Lowenfield v. Butler,* 485 U.S. 995, 996, 108 S.Ct. 1456, 99 L.Ed.2d 686 (1988) (Brennan, J., dissenting) (noting that, in *Ford,* "[a] majority of this Court did not agree on the precise procedures that the Constitution requires when the question is raised of a prisoner's sanity for execution"). In the brief in support of appellee's motion to preclude Dr. Michals from testifying, appellee's counsel asserted that, in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the High Court had previously "prohibit[ed][ ] conducting examinations outside the presence of defense counsel." R.R. at 65a. According to appellee's counsel, the *Smith* Court "determined that the Fifth and Sixth Amendments were violated when the defendant was questioned by a court psychiatrist without warnings and outside the presence of counsel," *id.* at 64a, and "[t]his is precisely what happened here," *id.* at 65a. Counsel is mistaken.

*Estelle v. Smith* concerned a Texas prisoner's petition for federal *habeas corpus* relief. Before Smith's trial, once the prosecution announced that it would seek the death penalty, the trial judge *sua sponte* ordered the prosecution to arrange a psychiatric examination of Smith by a court-appointed psychiatrist. The trial judge ordered the examination "to determine Smith's competency to stand trial" even though the defense had not alleged that Smith was incompetent to stand trial. *Smith,* 451 U.S. at 457 & n. 1, 101 S.Ct. 1866. After the psychiatrist determined that Smith was competent, the case proceeded to trial, resulting in Smith's murder conviction. During the penalty phase that followed, the prosecution presented testimony from the psychiatrist as proof of Smith's future dangerousness, an aggravating circumstance under the Texas statute. The psychiatrist was the prosecution's only witness at the penalty hearing, and his testimony was based on information derived from his examination of Smith. *Id.* at 458–60, 101 S.Ct. 1866. The jury ultimately imposed the death sentence, which was affirmed on direct appeal.

Thereafter, Smith sought a writ of *habeas corpus*. The federal district court granted relief, holding that "when the state introduces psychiatric testimony on dangerousness at the punishment phase of a capital trial the defense must have a fair opportunity to cross examine that testimony and rebut it with expert testimony on behalf of the defendant." *Smith v. Estelle,* 445 F.Supp. 647, 657 (D.C.Tex.1977). The Fifth Circuit affirmed on appeal, holding that "Texas may not use evidence based on a psychiatric evaluation of the defendant unless the defendant . . . was assisted by counsel in deciding whether to submit to the evaluation." *Smith v. Estelle,* 602 F.2d 694, 709 (5th Cir.1979). The Supreme Court, in turn, affirmed the Fifth Circuit, holding that the prosecution's failure to notify the defense that the examination would encompass the issue of Smith's future dangerousness violated Smith's Sixth Amendment right to counsel. *Smith,* 451 U.S. at 471, 101 S.Ct. 1866; *see also Powell v. Texas,* 492 U.S. 680, 681, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989) (identifying this as *Smith's* holding).

In reaching its holding in *Smith,* the High Court was careful to note as follows:

[T]he issue before us is whether a defendant's Sixth Amendment right to the assistance of counsel is abridged when the defendant is not given prior opportunity to consult with counsel about his participation in the psychiatric examination.

[Smith] does not assert, and the Court of Appeals did not find, any constitutional right to have counsel actually present during the examination. In fact, the Court of Appeals recognized that "an attorney present during the psychiatric interview could contribute little and might seriously disrupt the examination."

*Smith,* 451 U.S. at 471 n. 14, 101 S.Ct. 1866 (citation omitted) (quoting *Smith,* 602 F.2d at 708).

Thus, although *Smith* did not squarely present the issue of whether defense counsel must be present during psychiatric

examinations of the defendant,[8] the decision does not support the propositions appellee's counsel asserted as black-letter law. For one thing, the examination in *Smith* occurred at the pre-trial stage, where there was a Sixth Amendment right to counsel. Equally important, in explicitly disclaiming the holding for which appellee's counsel cites it, the High Court noted the very same concerns articulated by Dr. Welner in the instant matter in declining to conduct the interviews under the conditions ultimately imposed by the trial court. Nor does *Smith* suggest that the Commonwealth here committed a constitutional violation by failing to notify defense counsel before, on September 23, 2005, Dr. Michals attempted to examine appellee and questioned DOC personnel in response to a claim of incompetency raised by the defense, not by the Commonwealth. Volunteer defense counsel was well aware of exactly who would be examining appellee and questioning the personnel (*i.e.*, Dr. Michals), exactly for what limited purpose (*i.e.*, to determine whether appellee was incompetent to be executed, as counsel claimed), and, with respect to the personnel, exactly which questions would be asked. *Compare with Smith, supra*; *see also Satterwhite v. Texas*, 486 U.S. 249, 254, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) (noting that "[t]he problem in [*Smith*] was that defense counsel were not given advance notice **that [the] psychiatric examination, encompassing the issue of their client's future dangerousness, would take place**") (emphasis added). In this case, defense counsel simply was not informed of the particular times and places that Dr. Michals would attempt to conduct the examina-

**8.** While the High Court has not yet specifically addressed whether there is a constitutional right to the presence of defense counsel at psychiatric examinations, each of the six federal Circuits that has had occasion to do so has determined that a defendant's constitutional rights are not violated when he is examined by a psychiatrist in the absence of defense counsel. *See Re v. Snyder*, 293 F.3d 678, 682 (3d Cir.), *cert. denied*, 537 U.S. 979, 123 S.Ct. 442, 154 L.Ed.2d 340 (2002); *United States v. Klat*, 156 F.3d 1258, 1264 (D.C.Cir.1998); *United States v. Bondurant*, 689 F.2d 1246, 1249 (5th Cir.1982); *United States v. Trapnell*, 495 F.2d 22, 24–25 (2d Cir.), *cert. denied*, *Trapnell v. United States*, 419 U.S. 851, 95 S.Ct. 93, 42 L.Ed.2d 82 (1974); *United States v. Bohle*, 445 F.2d 54, 67 (7th Cir.1971); *United States v. Albright*, 388 F.2d 719, 726–27 (4th Cir.1968).

tion and question the DOC personnel. Therefore, the only consequence that ensued was the absence of defense counsel from the examination and interviews, but that is not a consequence of any constitutional significance. Psychiatric exams are not depositions.

Moreover, to the extent that it is relevant, *Ford*, like *Smith*, undermines rather than supports appellee's position. In the brief in support of appellee's motion to preclude Dr. Michals from testifying, appellee argued that, in the absence of defense counsel, a psychiatric expert's "misperceptions could go uncorrected and misdiagnoses rendered impossible to challenge." R.R. at 65a. As the *Ford* Court noted, however, there is no reason for such concerns when the defense may simply cross-examine the expert witness, thereby "bringing to light the bases for [his] beliefs, the precise factors underlying those beliefs, [and] any history of error or caprice" on the expert's part. *Ford*, 477 U.S. at 415, 106 S.Ct. 2595. Moreover, the defense has its own experts. Indeed, in this case, the trial court apparently deemed cross-examination to be sufficient for the Commonwealth, as it did not require the presence of government attorneys at appellee's examinations by defense experts, which occurred without notice to, and outside the presence of, counsel for the Commonwealth. *See* N.T., 12/19/05, at 24.

■ The foregoing makes clear that the counsel-presence requirement imposed by the trial court was: (1) not actually memorialized by that court in an order; (2) never authorized or justified by this Court; and (3) not warranted by binding or even persuasive authority from any other court, including the U.S. Supreme Court. To compound the error, the Commonwealth was denied sufficient time to allow its second expert to prepare adequately.

Therefore, the trial court is directed to hold another competency hearing at which the Commonwealth may present a meaningful case on the question of appellee's competency, including, if it wishes, the testimony of Dr. Michals. The court shall hold such hearing expeditiously and is specifically

directed to impose no presence-of-counsel restrictions upon the Commonwealth's expert. Moreover, with the exception of scheduling and logistical matters, the trial court is not to be diverted by tangential motions and assertions by counsel: **this** Court retains jurisdiction over such matters. The trial court is to act expeditiously in conducting the rehearing.

Jurisdiction retained.[9]

Justices SAYLOR, EAKIN, BAER and FITZGERALD join the opinion.

Chief Justice CAPPY files a dissenting opinion in which Justice BALDWIN joins.

Chief Justice CAPPY dissenting.

I dissent. The Majority grants a new competency hearing merely because the trial court precluded the testimony of the Commonwealth's psychiatric expert, Dr. Michals, six weeks before the competency hearing was conducted. Contrary to the Majority, my examination of the record leads me to conclude that the Commonwealth created its own predicament when it failed to abide by the trial court's directive and failed to refute the overwhelming evidence establishing George E. Banks' incompetence. Accordingly, I would affirm the findings and conclusions of law of the Court of Common Pleas of Luzerne County, establishing that Banks is incompetent to pursue clemency proceedings and incompetent to be executed.

Initially, I agree with the Majority that the record does not include a written trial court order requiring defense counsel to be present during psychiatric interviews of Banks. The trial court specifically found, however, that the parties "understood that any contact with Banks by the Commonwealth would be in the presence of defense counsel or other representatives of

9. On July 9, 2007, appellee filed an application for leave to file post-submission communication pursuant to Pa.R.A.P. 2501, urging this Court to consider the U.S. Supreme Court's recent decision in *Panetti v. Quarterman*, —— U.S. ——, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007) (holding that presence of delusions is relevant to competency to be executed). Because we retain jurisdiction over the instant matter, appellee's application is denied as moot.

the defense." Trial Court Opinion at 2. Moreover, the Commonwealth never proceeded on the theory that it was uninformed of the trial court's directive. At the hearing on the motion to exclude Dr. Michals' testimony, the Commonwealth did not assert that it was unaware that defense counsel had to be present for interviews of Banks. Instead, counsel for the Commonwealth apologized for her "oversightedness" in failing to advise defense counsel that Dr. Michals was going to see Banks a third time. N.T. 11/19/2005 at 25.[1]

Having established that such ruling existed, I would not delve into whether the trial court properly required defense counsel's presence during Dr. Michals' examination of Banks. Simply put, the Commonwealth has not developed this claim. Rather than examining the arguments made by the parties in their briefs, the Majority instead goes to great lengths to refute statements made in Appellee's motion to preclude Dr. Michals from testifying. *See* Majority Opinion at 308, 943 A.2d at 236–37. Such motion is not currently before our Court. The mere fact that we assumed plenary jurisdiction over the matter and retained jurisdiction while the trial court acted as fact finder did not absolve the parties from their obligation to adhere to the trial court's directives and properly address claims of error in their briefs filed in this Court.

While I concede that the Commonwealth raised the issue challenging the propriety of the presence-of-counsel requirement,[2] it does not address the issue directly, but includes in its discussion of the collateral order doctrine an assertion that

1. As an aside, the trial court granted the motion to preclude Dr. Michals' testimony on *two* grounds: (1) that Dr. Michals had an improper third contact with Banks on September 19, 2005 without notice to or the presence of defense counsel; and (2) that Dr. Michals had interviewed employees of the Department of Corrections without notice to or access by the defense. The Majority does not address the alternative ground for the preclusion of Dr. Michals' testimony and report.

2. In its statement of Issue No. 3, the Commonwealth queries:
   Did the lower court err when it ordered that defense counsel must be present at all future Commonwealth interviews of Banks and Department of Corrections staff and that such interviews must be transcribed?
   Appellant's Brief at 6.

*Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), does not require defense counsel to be present during competency evaluations. *See* Appellant's Brief at 24–25. Such assertion is simply insufficient to warrant relief. *See generally Commonwealth v. Edmiston,* 578 Pa. 284, 851 A.2d 883, 899 (2004) (holding that defendant's claim that the court failed to provide him with a meaningful opportunity to adduce evidence fails because defendant failed to develop the argument).

Finally, I disagree that, given the trial court's restrictions on the presentation of evidence, the Commonwealth was effectively precluded from presenting evidence. Notwithstanding the fact that the trial court permitted the Commonwealth to utilize Dr. Michals in preparing for the hearing, the Commonwealth did not in any way challenge the reliability of the expert opinions on cross-examination or rebut the substantive evidence presented on behalf of Banks. Further, the Commonwealth had another expert, Dr. Steven Samuel, who did not have improper contact with Banks. The Commonwealth was also free to retain additional experts in the six weeks remaining before the scheduled hearing.

The Commonwealth instead presented the testimony of Dr. Welner, who stated that he did not have sufficient time to review the information to form an opinion as to Banks' competency. The trial court concluded that there was a lack of diligence on the part of the Commonwealth in preparing Dr. Welner for the hearing and a lack of diligence on the part of Dr. Welner in failing to review the records he possessed and/or interview Banks prior to the hearing. These conclusions are supported by the record. At the outset of the competency hearing, the Commonwealth noted that its "participation in this hearing will be in a limited fashion, as the Court will observe when we proceed." N.T. 1/31/2006 at 10. The Commonwealth's strategy in this regard proved to its detriment.

This being said, I would proceed to review the trial court's competency determinations. The standard to determine if one is incompetent to be executed under *Ford* is whether the

person "comprehends the reason for the death penalty and its implications." *Commonwealth v. Jermyn,* 539 Pa. 371, 652 A.2d 821, 824 (1995). Further, we have held that it is the burden of the defendant to establish his or her incompetence by a preponderance of the evidence. *Commonwealth v. Zook,* 585 Pa. 11, 887 A.2d 1218, 1225–26 (2005). Banks' counsel clearly satisfied this burden.

The trial court found that under any evidentiary standard of proof, the records and testimony established that Banks lacks the capacity for rational and factual understanding of his death sentences and of the actual reasons for and implications of those sentences. The trial court engaged in a comprehensive analysis of the evidence presented and its findings are not only clearly supported by the record, but are undisputed. Three expert witnesses diagnosed Banks with psychotic disorder, not otherwise specified. N.T. 1/31/2006 at 17 (testimony of Dr. John Sebastian Obrien, II); *Id.* at 152 (testimony of Dr. Richard G. Dudley, Jr.); *Id.* at 251 (testimony of Dr. Jethro W. Toomer). The experts explained that Banks is delusional, suicidal, refuses to eat, and speaks of devils and demonic spirits torturing him. *Id.* at 31, 37. The experts further explained that Banks' delusions go directly to the issue of his death sentence as he believes that he has been pardoned, that he is no longer facing execution, and that he is awaiting release. *Id.* at 20, 186. The evidence established that Banks self-mutilated his body, referred to his resultant skin disorder as a "flesh-eating demon," and refused medical treatment. *Id.* at 38, 210. The experts agreed that Banks is not malingering. *Id.* at 103, 219, 331. This conclusion was based on the consistent documentation of psychotic symptoms over time and in different contexts.

Banks' counsel further submitted hearing exhibits including documentation from the correctional officers, counselors, supervisors, the prison superintendent, nurses, medical doctors, psychiatrists, psychologists, commitment evaluators, and others who had daily contact with Banks. These sources painstakingly documented Banks' psychotic behavior. The conclusions reached by these professionals were entirely consistent

with the conclusions of Banks' experts. The trial court itself further observed that Banks' behavior at the evidentiary hearing was consistent with his mental illness and that it was clear that he was not rationally engaged or able to interact with counsel and lacked the capacity to participate. Trial Court Opinion at 18. In short, the evidence presented establishing Banks' incompetency is nothing short of overwhelming and a second competency hearing is unwarranted.

Accordingly, I would rule that Banks is incompetent to pursue clemency proceedings and incompetent to be executed.

Justice BALDWIN joins this dissenting opinion.