986 A.2d 128

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Edward BRACEY, Appellant.**

**No. 565 CAP.**

Supreme Court of Pennsylvania.

Submitted May 15, 2009.

Decided Dec. 29, 2009.

460

462

Billy Horatio Nolas, James H. Moreno, Defender Association of Philadelphia, for Edward Bracey.

Hugh J. Burns, Philadelphia, Amy Zapp, Harrisburg, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## *OPINION*

Chief Justice CASTILLE.

In this appeal, this Court is asked to consider the constitu-

tional necessity for a jury trial for purposes of an *Atkins*[1] claim that is raised during collateral proceedings under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541–9546. In *Atkins*, broadly speaking, the U.S. Supreme Court held that the execution of mentally retarded persons convicted of capital crimes violated the Eighth and Fourteenth Amendments to the United States Constitution. Divining that there now appeared to be a consistent national consensus opposed to the execution of the mentally retarded, the Supreme Court believed that it was time to revisit its prior decision in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), which had held that the Eighth Amendment did not prohibit the execution of the mentally retarded. *Id.* at 314–16, 109 S.Ct. 2934. The Court, however, left the determination of how to apply the ban on the execution of mentally retarded defendants to the individual states. *Atkins*, 536 U.S. at 317, 122 S.Ct. 2242. In the absence of any Pennsylvania legislative pronouncement following *Atkins*, this Court was called upon to define mental retardation for purposes of Pennsylvania law and we answered this call in *Commonwealth v. Miller*, 585 Pa. 144, 888 A.2d 624 (2005). In the case *sub judice*, this Court is asked to consider both an *Atkins* claim and an *Atkins*-related question. The derivative claim is strictly procedural: whether appellant Edward Bracey is entitled to have a jury entertain his post-conviction *Atkins* claim, raised under the Sixth and Fourteenth Amendments to the United States Constitution. *See Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). The PCRA court concluded that appellant's *Atkins* claim, which was impeded by counsel's inexplicable refusal to present evidence of mental retardation to the PCRA judge, was meritless, and that rendered his request for a jury trial moot. The court dismissed appellant's serial PCRA petition. For the reasons stated herein, we hold that the jury trial claim should have been reached but, on the merits, there is no federal constitutional right to a jury trial for *Atkins* claims presented in collateral proceedings. As will be ex-

1. *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).

plained, we vacate the PCRA court's order and remand for an evidentiary hearing and bench determination of appellant's *Atkins* claim.

On March 3, 1992, a jury found appellant guilty of the first-degree murder of Philadelphia police officer Daniel Boyle.[2] Following a penalty hearing, the jury found two aggravating circumstances—that the victim was a police officer killed in the performance of his duties, 42 Pa.C.S. § 9711(d)(1), and that appellant had a significant history of felony convictions involving the use or threat of violence, 42 Pa.C.S. § 9711(d)(9). The jury found no mitigating circumstances, and, accordingly, set the penalty at death. *See* 42 Pa.C.S. § 9711(c)(1)(iv). This Court affirmed the judgment of sentence on July 21, 1995. *Bracey, supra* n.2.

On May 10, 1996, appellant filed a *pro se* PCRA petition and the PCRA court appointed the Center for Legal Education, Advocacy, and Defense Assistance ("CLEADA") to represent him. The PCRA court held a seven-day evidentiary hearing on appellant's claim that counsel was ineffective during the penalty phase of his trial for failing to adequately investigate and present evidence of his supposed organic brain damage or his mental illness. Following the hearing, the PCRA court denied relief. This Court affirmed the PCRA court's determination on appeal. *Commonwealth v. Bracey,* 568 Pa. 264, 795 A.2d 935 (2001).

On August 15, 2002, appellant, through the Philadelphia Federal Community Defender, filed a second PCRA petition (also styled as a Petition for Habeas Corpus Relief under Article 1, Section 14 of the Pennsylvania Constitution), raising a claim that he was a mentally retarded individual who was ineligible for the death penalty under the then-recent *Atkins* decision. In his brief in support of the PCRA petition, appellant asserted that there was sufficient evidence of mental retardation presented at the 1998 PCRA hearing and in the

2. The full rendition of the facts underlying the first-degree murder conviction are contained in *Commonwealth v. Bracey,* 541 Pa. 322, 662 A.2d 1062 (1995), *cert. denied,* 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996).

supporting affidavits entered at the prior proceeding that would justify an evidentiary hearing on his *Atkins* claim. Appellant also asserted the right to a jury determination on his *Atkins* claim.

The Commonwealth disagreed, arguing, in relevant part,[3] that all three of appellant's experts agreed at the prior PCRA hearing that appellant was not mentally retarded and that his current claims were supported by nothing other than bald assertions. For this reason, the Commonwealth requested that the PCRA court dismiss the petition without an evidentiary hearing.

The PCRA court scheduled a three-day hearing on the *Atkins* claim for September 13–15, 2006. Appellant made no further mention of the jury issue until shortly before the scheduled *Atkins* hearing. On September 5, 2006, James Moreno, Esq., of the Federal Community Defender submitted a letter to the PCRA court, requesting that the hearing be cancelled in light of appellant's decision not to present any testimony. This letter was followed with a second letter, dated September 8, 2006, by Billy Nolas, Esq., also of the Federal Community Defender, explaining that defense counsel believed that under *Ring*, the appropriate factfinder for a collateral *Atkins* claim was a jury. The letter further stated that "proceeding to a final disposition by the court without a jury will be prejudicial to the [appellant]'s jury trial argument." *See* Letter, 9/8/2006, at 2. The letter declared that "in order not to prejudice Mr. Bracey's jury trial argument, we will not be presenting further evidence for the court itself.

---

**3.** The other arguments submitted by the Commonwealth pertained to whether the courts should act at all in the *Atkins* arena as there was legislation pending, and, if the courts did act, which party should bear the burden of proof at an *Atkins* hearing on collateral review, as well as the proper definition of mental retardation. Many of these arguments were answered by this Court's subsequent decisions in *Miller, supra,* and *Commonwealth v. Crawley*, 592 Pa. 222, 924 A.2d 612 (2007), and do not need to be revisited at this juncture. Worth noting, however, is that in the initial response, the Commonwealth argued for a two-step process for reviewing *Atkins* claims on collateral review, involving first a judicial determination as to whether there was sufficient evidence to establish mental retardation; and then second, a jury determination of whether the defendant was in fact mentally retarded.

Instead, we will rely on the evidence of record." *Id.* The letter also asked that the court certify the jury trial issue immediately for appeal.

The court, obviously surprised by the defense request and assertions, ordered all parties to be present for the September 13th hearing. At the hearing, appellant continued to demand recognition of a constitutional right to a jury determination on the *Atkins* question on collateral review. Appellant's counsel acknowledged that no such right had been declared in Pennsylvania, and cited no controlling federal authority, but expressed the belief that appellant had to "st[an]d on that jury trial 6th Amendment right like other people," in order for the jury request to be preserved for future proceedings. N.T., 9/13/2006, at 14. Counsel also alleged a "fear" that "if we proceed to a court hearing in a case such as this, it would be either held against us in terms of the assertion of the 6th Amendment jury trial right, or it would be something that would be detrimental to the jury trial right." *Id.* at 5.

The Commonwealth argued that the issue was waived and that it was "too late" for appellant to change his position and request an *Atkins* jury at the last minute. Alternatively, the Commonwealth renewed its position that there was no *prima facie* case warranting an evidentiary hearing, stating "that the defense was actually given a gift even to get, with all due respect, but it was lucky for them to even be granted a hearing because there was no basis for it." For similar reasons, the Commonwealth asserted that it was inappropriate for the *Atkins* claim to go to a jury. *Id.* at 17–20.

In response to counsel's arguments, the court did not rule on the Commonwealth's assertion that the right to a jury issue was waived due to its last minute presentation; nor did it directly rule on the merits of the asserted "right" to a jury determination of an *Atkins* claim posed on collateral attack. Such a ruling clearly was implied, however, where the court stated:

This Court is in the field, in the trenches, if you will, like every other trial judge in the Commonwealth and to the

extent precedent has already been established, this Court follows that precedent. At this point in time what I have before me, frankly, is not different from many other situations and that you ask for a trial by jury or that you ask for anything in here, whether it's that the defendant not be shackled in the courtroom, **you ask it and I say no, your request is denied. You have not waived the issue because you actually preserved it by requesting it, same thing for a jury trial.**

The issue here today is whether or not Mr. Bracey agrees with by knowingly, intelligently, and committedly . . . agrees with the decision to, quote, unquote, rest on the papers and forego an *Atkins* hearing, whereby there will be testimony presented for this Court without a jury to decide whether or not there is sufficient evidence to believe that it warrants this Court either using all the standards announced in *Miller* that he is mentally retarded, even that he's competent or not competent but mentally retarded such that it qualifies for him to be taken out of the realm of the imposition of the death penalty, nothing more.

*Id.* at 25–26 (emphasis added). Thereafter, the court conducted a colloquy with appellant in order to ensure that he was in agreement with his counsel's strategy to refuse to present mental retardation evidence at a non-jury *Atkins* hearing. *See id.* at 30–33. After further argument from both sides, the court then stated, "[t]he court will allow counsel to, quote, unquote, rest on the papers. I will consider everything that's been filed and issue a ruling in this matter." *Id.* at 33. Appellant did not renew his request that the trial court certify the jury trial question for immediate interlocutory review in this Court, nor did he seek interlocutory review directly in this Court, but instead awaited the determination of the *Atkins* question on the materials presented. On June 12, 2007, the court dismissed the PCRA petition and later filed an opinion in support of that order.

In the opinion, the court noted that it needed to determine whether it could properly consider the existing record evidence in support of the *Atkins* claim. The court pointed out

that on October 17, 2006, appellant had filed a "Notice of New Supplement," referring to an unrelated *Atkins* case that was pending before a different Common Pleas Court Judge, wherein the Commonwealth allegedly sought a jury trial on the issue of mental retardation on collateral review. Appellant asserted that the Commonwealth's position in that case subjected it to a potential jury trial for every collateral *Atkins* claim the Philadelphia District Attorney's Office was subsequently involved in. The court disagreed.

Turning to the issue of appellant's reliance on evidence developed in the 1998 PCRA proceedings on mental health mitigation, the court considered this Court's decision in *Miller*, wherein we explained that a PCRA court could not simply rely on existing record evidence, offered for the distinct purpose of establishing organic brain damage, in ruling on an *Atkins* claim. Instead, in retroactive *Atkins* cases, the PCRA court must hold an evidentiary hearing on colorable *Atkins* claims, since evidence offered to establish organic brain damage, for a purpose other than to prove *Atkins* mental retardation, was of limited value in assessing an *Atkins* claim. *Miller*, 888 A.2d at 632–33; *see also Commonwealth v. Mitchell*, 576 Pa. 258, 839 A.2d 202, 210 (2003) ("The issue of mental retardation was touched upon in passing, but it was not the focal point of the testimony of the witness, nor was it a central focus of either direct or cross-examination. It would be injudicious to reach a legal conclusion on the question of mental retardation based on the current record.").[4]

Applying these cases to the matter at hand, the court correctly pointed out that *Atkins* did not exist at the time of appellant's first PCRA hearing, and the proffer at that hearing was inadequate for *Atkins* purposes: "The issue of any potential mental retardation was only briefly mentioned in the context of determining whether or not said brain damage or

---

4. The U.S. Supreme Court recently confirmed this Court's understanding of this distinction as correct in *Bobby v. Bies*, —— U.S. ——, ——, 129 S.Ct. 2145, 2149, 173 L.Ed.2d 1173 (2009), when it stated, "mental retardation for purposes of *Atkins*, and mental retardation as one mitigator to be weighed against aggravators, are discrete issues." *See also id.* at 2153.

mental illness existed; it was not the specific issue being explored. As such, there was no adequate direct-examination, cross-examination or argument on the issue of mental retardation in the context of *Atkins.*" PCRA Court Slip Op. at 12. Therefore, the court concluded that appellant's refusal to present any new and relevant evidence in support of his *Atkins* claim rendered it meritless and that fact, in turn, rendered the request for a jury trial moot. The court further noted that this Court's decision in *Commonwealth v. Crawley,* 592 Pa. 222, 924 A.2d 612 (2007), suggested that the PCRA judge was the proper factfinder and decision-maker for *Atkins* determinations raised on collateral review.

We now review the PCRA court's *Atkins* determination as well as appellant's core assertion that he is entitled to a jury trial on the question of *Atkins* mental retardation on collateral attack, as well as his (or his counsel's) belief that he was entitled to dictate the nature and scope of the *Atkins* proceedings below, while he pursued his jury trial claim, which has built unnecessary delay into the resolution of this serial petition.

This Court has direct appellate review over cases involving the sentence of death. 42 Pa.C.S. § 722(4). The jurisdictional requirement of the PCRA states that any petition, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final. 42 Pa.C.S. § 9545(b)(1). The statute further provides that any petition invoking an exception to the one-year time requirement "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

This Court has previously held that we have jurisdiction over an *Atkins* claim pursuant to 42 Pa.C.S. § 9545(b)(1)(iii) so long as the petition raising the claim was filed within sixty days of the *Atkins* decision, as required by 42 Pa.C.S. § 9545(b)(2).[5] *See Miller,* 888 A.2d at 629 n. 5. In this case, appellant filed his petition on August 15, 2002, which was

---

5. Pursuant to Pa.R.Crim.P. 909(B), appellant must also demonstrate that his request for an *Atkins* hearing presents a genuine issue concerning a material fact, in this instance, whether he is mentally retarded.

within sixty days of *Atkins*' June 20th decision date. Thus, the PCRA court had jurisdiction over appellant's *Atkins* claim generally. Of course, appellant's attempt to secure recognition of a right to a jury trial under the Sixth Amendment on the *Atkins* claim premised upon *Ring* would not on its own satisfy the PCRA time-bar. That is a derivative and purely procedural issue which has not been decided by the U.S. Supreme Court and, moreover, such a claim does not implicate death-eligibility, as *Atkins* does. *See, e.g., Commonwealth v. Abdul–Salaam*, 571 Pa. 219, 812 A.2d 497 (2002) (rejecting *Ring* claim under § 9545(b)(1)(iii) on basis that *Ring* had not been declared retroactive by the U.S. Supreme Court or this Court). Nevertheless, in the absence of any argument from the Commonwealth to the contrary, we will deem the procedural issue to be sufficiently related to the substantive and cognizable *Atkins* claim such that the PCRA court did not err in entertaining it.

Appellant contends that he has established a genuine issue of material fact as to whether he is mentally retarded as defined by this Court in *Miller*. According to appellant, a mental retardation diagnosis may be appropriate for individuals with IQ scores between 71–75 if they also have significant deficits in adaptive behavior. Appellant then asserts that the existing record demonstrated that his IQ score falls within this borderline range, which he believes is sufficient on its own to trigger an *Atkins* inquiry. If there is a genuine issue of material fact on the *Atkins* issue, appellant argues, there is a preliminary procedural question of who is the appropriate factfinder to make the mental retardation determination on PCRA review.

Appellant asks this Court to hold that he has a federal constitutional right to a jury in these circumstances. Appellant cites *Ring*, 536 U.S. at 602, 122 S.Ct. 2428, which reiterated the principle from *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of fact, that fact—no matter how the state labels it—must be found by a jury beyond a reasonable

doubt." *Ring*, 536 U.S. at 602, 122 S.Ct. 2428 (citing *Apprendi*, at 482–83, 120 S.Ct. 2348). Appellant then applies this precept to his *Atkins* claim, asserting that in Pennsylvania the maximum punishment for first-degree murder is life in prison, because only those defendants "not found to be persons with mental retardation are subject to the death penalty." Appellant's Brief at 50.

Appellant then urges this Court to follow other states which he claims have extended the right to a jury trial on the mental retardation issue in post-conviction proceedings. Most pointedly, appellant invokes the pre-*Atkins* ruling of the Georgia Supreme Court in *Fleming v. Zant*, 259 Ga. 687, 386 S.E.2d 339 (1989), which concluded that a defendant is entitled to a trial by jury on the question of mental retardation in post-conviction proceedings when there is a genuine issue as to whether the defendant is mentally retarded. Appellant also points to decisions from the Supreme Court of Virginia and an intermediate appellate court in Oklahoma, as well as statutes adopted in five other states, which he alleges similarly require the question of mental retardation to be answered by a jury in post-conviction proceedings. *See Burns v. Warden*, 269 Va. 351, 609 S.E.2d 608 (2005); *Lambert v. State*, 71 P.3d 30 (Okla.Crim.App.2003); Ark.Code Ann. § 5–4–618(d)(2)(A) (2006); Cal.Penal Code § 1376(b)(2) (West 2003); Conn. Gen. Stat. § 53a–46a(h) (1997); La.Code Crim. Proc. Ann. art. 905.5.1(C)(1) (2003); N.C. Gen.Stat. § 15A–2005(e) (2001).

Appellant next asks this Court to consider that the Commonwealth forwarded a right to jury trial argument on PCRA review on the mental retardation issue in an unrelated Philadelphia capital case, *Commonwealth v. DeJesus*, 546–547 CAP (appeal currently pending before this Court). Appellant asserts that the Commonwealth's argument in *DeJesus* amounts to an admission of merit in appellant's claimed constitutional right in this case.

Appellant then turns to the PCRA court's opinion. He asserts that the PCRA court erroneously deemed the jury trial issue to be "moot," since he asked the court to find that the pre–*Atkins* record was sufficient to create a jury question,

to find that he had a "right" to an *Atkins* jury trial, and to allow appellant to present further evidence so that the appropriate *Atkins* factfinder, which in his opinion is a jury, can decide the mental retardation issue.

In addition to seeking a remand for a jury determination of his *Atkins* claim, appellant requests in the alternative that, if we reject his request for a jury on the mental retardation question, the case should be remanded for the bench hearing that the PCRA judge offered him, but which he strategically refused. Appellant argues that this result is commanded by this Court's decision in *Commonwealth v. Banks*, 596 Pa. 297, 943 A.2d 230 (2007) (per curiam), which he claims held that the Commonwealth's "refusal" to proceed to a hearing on competency to be executed with a new expert witness did not waive its right to raise the issue on appeal, but instead led to a remand to the PCRA court with instructions to hold another hearing, even though the Commonwealth had refused to comply with the PCRA court's directive.[6]

Preliminarily, we reject the notion that appellant is entitled to a remand premised on *Banks*. In *Banks*, this Court exercised plenary jurisdiction in the face of an existing death warrant and a claim that the defendant was incompetent to be executed. We essentially drafted the trial court to act as a special master for the limited purpose of holding an expeditious hearing on the narrow question of the capital defendant's competency to be executed. Furthermore, the driving force behind the *Banks* per curiam opinion was the trial court's purported "order," which had neither been memorialized by

---

**6.** Appellant also asks for a remand so he can be evaluated under the new Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS–IV") test. The WAIS test is the intelligence test that is commonly administered to help determine mental retardation. According to appellant, the existing WAIS test was refined and a new test, the WAIS–IV, was introduced in November of 2008, after his appeal was filed before this Court. Appellant produces written declarations from the three experts who testified at the 1998 PCRA hearing, stating that the WAIS–IV is an improved and updated test, which would greatly aid the Court in making a mental retardation determination. Since we are remanding for a bench *Atkins* determination, this request is moot. Thus, we will not pass upon whether this remand request is timely, cognizable and meritorious under the PCRA.

that court nor approved by this Court. That order allegedly required the Commonwealth's mental health expert to interview appellant only with defense counsel present. Based upon the trial court's consequent refusal to permit the Commonwealth's prepared expert to testify, a ruling this Court never authorized, this Court directed the trial court to hold another expeditious competency hearing at which the Commonwealth could present its case. This case is not like *Banks*. Here, appellant was granted a hearing and he was not barred by the PCRA court from presenting evidence; rather, he strategically declined to produce evidence. *Banks* does not say what appellant claims it says, and his reliance upon that case does not warrant, much less require, a remand.

The Commonwealth responds, accurately enough, that Pennsylvania Rule of Criminal Procedure 908 provides that "the judge shall determine all material issues" raised in a PCRA petition. Pa.R.Crim.P. 908(d)(1). The Commonwealth also notes that there is no recognized Sixth Amendment right to a jury trial on an *Atkins* claim under *Ring*, nor should there be. The Commonwealth avers that the holding in *Ring* was limited to the right to a jury determination of aggravating circumstances and did not speak to any issues other than the identity of the factfinder for aggravating factors. The Commonwealth also points out that the *Atkins* majority, in considering what "evolving standards of decency" required, relied upon many state statutes that left the mental retardation determination to a judge and not a jury. Moreover, the Commonwealth adds, even among those jurisdictions which require a jury determination on mental retardation, many allow a judge to make the determination at the collateral proceeding phase. The Commonwealth also points to *Schriro v. Smith*, 546 U.S. 6, 126 S.Ct. 7, 163 L.Ed.2d 6 (2005) in support of its position, arguing that the High Court there emphasized that it was for the states to determine whether a jury trial is the "appropriate way" to enforce *Atkins*. Finally, the Commonwealth adds that any jury trial question is "academic here" because the U.S. Supreme Court has concluded that *Ring* does not apply retroactively to cases on collateral

review. *See Schriro v. Summerlin,* 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004).

Turning to the decisional law relied upon by appellant in support of his assertion of a Sixth Amendment right to a jury trial for a collateral *Atkins* determination, the Commonwealth asserts that *Fleming* was decided under Georgia law and, in fact, the Georgia Supreme Court has held that there is no Sixth Amendment right to a jury on the question of mental retardation. *See Head v. Hill,* 277 Ga. 255, 587 S.E.2d 613, 620 (2003). Similarly, the Virginia Supreme Court's decision in *Burns* was based on a state statute and not on the Sixth Amendment. Finally, the Court of Criminal Appeals of Oklahoma in *Lambert* did not rely on the Sixth Amendment. Therefore, there is no support for appellant's claim of a Sixth Amendment entitlement to a jury determination of an *Atkins* claim. To the extent appellant would have this Court derive a jury trial right from the decision in *Ring,* for this circumstance, the Commonwealth notes that *Ring* announced a new rule of procedural law which does not apply retroactively to cases already final on direct review. At the time *Ring* was decided, appellant's judgment of sentence had already been final for six years.

As to the question of mandate, however, the Commonwealth requests a remand for a bench determination of *Atkins* mental retardation, but for different reasons than those forwarded by appellant. The Commonwealth asserts that any other result might ultimately reward appellant's federal counsel for their gamesmanship, which the Commonwealth submits was a strategy to bypass the state courts on the substantive *Atkins* question. Thus, the Commonwealth avers that refusing to remand the matter would reward appellant's "contumacy by enabling him to raise the claim anew in a federal habeas petition, without the burden of fact-finding by the state courts." Brief of the Commonwealth at 17. The Commonwealth argues that appellant's stated rationale for refusing to introduce relevant evidence before the PCRA judge of his supposed mental retardation—a professed fear of thereby waiving his claim of an existing "right" to a jury determina-

tion—is "nonsense," since appellant made an objection before the PCRA court, which the court specifically noted that the objection preserved the jury question for this Court's review. The Commonwealth hypothesizes that such a facially risky position suggests that appellant and his counsel have their strategic sights set on *de novo* habeas corpus review in the local federal courts, which appellant's federal lawyers view as a more sympathetic forum in capital matters. Luring this Court into finding the *Atkins* claim waived, the Commonwealth argues, "would offer them their best long-term prospect for relief," since "if no *Atkins* hearing is held in state court, defense counsel will argue on habeas review that defendant is entitled to such a hearing in federal court. And, since it has been decades since the federal courts have upheld a sentence of death with respect to any Philadelphia prisoner who did not consent to be executed, they will find themselves in a remarkably favorable forum for that argument." *See* Brief of the Commonwealth at 19–20.[7] The Commonwealth argues that this Court should reject this illegitimate strategy, and order a bench hearing on the mental retardation claim.

As a corollary to the above position, the Commonwealth argues for the removal of the Federal Community Defender, which apparently has volunteered its services in this state court litigation, on the basis that it decided upon a strategy to "deliberately bypass the proper resolution of the *Atkins* claim in state court." Brief of the Commonwealth at 20–21.

In his reply brief, appellant responds to the Commonwealth's legal argument based on *Smith* and *Summerlin.* According to appellant, the *Smith* Court merely held that the

7. We note that the Commonwealth's concerns are not entirely implausible, as the Third Circuit has frequently declined to respect the procedural defaults this Court has employed in capital PCRA cases. *See Lewis v. Horn,* 581 F.3d 92, 105–06 (3d Cir.2009) (providing that "relaxed waiver" rule applied by this Court was not adequate to support finding of procedural default for purposes of federal habeas corpus review); *Thomas v. Horn,* 570 F.3d 105 (3d Cir.2009) (same); *Kindler v. Horn,* 542 F.3d 70 (3d Cir.2008) (concluding that discretionary fugitive forfeiture rule applied by this Court did not preclude federal habeas corpus review of claims alleged to be procedurally defaulted), *vacated and remanded sub nom. Beard v. Kindler,* —— U.S. ——, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009).

federal courts may not pre-emptively order state courts to hold a jury trial on *Atkins* claims, but instead, must give the state courts the first opportunity to determine the proper *Atkins* procedure, which would then be subject to constitutional challenge. Similarly, appellant argues that *Summerlin* does not preclude this Court from applying *Ring* to his *Atkins* claim as a matter of state law, as recognized by *Danforth v. Minnesota*, 552 U.S. 264, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008). Finally, in a policy argument, appellant urges this Court to reject the Commonwealth's request that his counsel be removed since counsel have a strong and lengthy relationship with appellant and they are well-qualified to represent him.

 Unfortunately, this matter should have been more focused and ready for ultimate decision on the *Atkins* claim. Instead, it is mired by procedural uncertainties resulting from the defense strategy below and the trial court's inconsistent responses. A trial level decision on the procedural question of a Sixth Amendment right to a jury trial on an *Atkins* claim raised upon serial collateral attack would be interlocutory, absent certification by the trial court and acceptance by this Court, or acceptance by this Court following a denial of certification. *See* Pa.R.A.P. 312 (providing for interlocutory appeals by permission under Chapter 13) and Pa.R.A.P. 1301 *et seq.* (providing procedure for seeking, granting and denying interlocutory appeals). Absent interlocutory appellate review, the trial level ruling on the procedural claim binds the parties and governs the litigation below. A party who would flout the procedural ruling risks the waiver that properly results anytime a party fails to discharge its burden of proof in a proceeding. Respecting such procedural rulings ensures that the appellate court has a complete record; in that manner, in a case such as this, the single cognizable issue on serial PCRA review, of *Atkins* mental retardation, could have been finally resolved without unnecessary delay.

 The Federal Community Defender's disagreement with the PCRA court's indication that the *Atkins* claim was proper-

ly for the court and not a jury—a suggestion that squared with the existing Rules of Criminal Procedure, and which was not contrary to **any** governing authority, as we will explain below—was not a legitimate ground to refuse to abide by the ruling and decline thereafter to present evidence, as if a matter of this import invites some game of capital "chicken." Indeed, if the Federal Community Defender truly thought that its novel *Atkins/Ring* jury claim was so clearly meritorious, that the consequences of presentation to a judicial factfinder were so clearly dire, and that appellant had an enforceable "right" to avoid those consequences, it should have sought an interlocutory appeal in this Court under Rule 312. Notably, appellant recognizes in his brief that this Court has concluded in the past that a claim raising the right to a jury trial may warrant a preliminary and immediate determination. *Cf. Commonwealth v. White*, 589 Pa. 642, 910 A.2d 648, 658–59 (2006) (interlocutory appeal as of right recognized after Commonwealth's assertion that denial of its request for jury trial would hamper its prosecution under Pa.R.A.P. 311(d)).[8] Yet, inexplicably, counsel did not follow the "immediate appeal" procedure that it cites in the brief.

The presumptive outcome of appellant's refusal to present his *Atkins* case would be that the *Atkins* claim would fail on the merits—the very result that occurred here. Most parties do not risk defeat of the merits of their claims with these sorts of manipulations. But this Court recognizes that the calculations by experienced federal capital counsel are more sophisticated. *See Commonwealth v. Steele*, 599 Pa. 341, 961 A.2d 786, 836–38 (2008) (Castille, C.J., joined by McCaffery, J., concurring). The Federal Community Defender's position below was obviously risky and tenuous: both the notion that appellant would somehow waive the claim of a right to a jury, or would somehow be prejudiced by presentation of his case to

8. We recognize, of course that *White* presents a stronger case for interlocutory review in the sense that, if the government's request for a jury is denied, it will have no post-trial appellate recourse, given double jeopardy limitations. A defendant directed to a bench trial, on the other hand, could pursue his jury trial issue on appeal, in the event of a conviction (or, in this instance, in the event of the rejection of an *Atkins* claim).

a judicial factfinder, as well as the substantive claim of an *Atkins* jury trial "right" of constitutional import which, as we explain below, finds no support in any existing, governing authority. Indeed, this is so much the case that it lends some credence to the Commonwealth's position that the strategy below was designed to ensure that no state court judge would pass upon the merits of the *Atkins* claim (or if it did, it would only be after the substantial delay occasioned by an incomplete record and appeal to this Court, seeking remand).

Notably, however, the Commonwealth has not pressed a waiver argument here, or even set forth an argument that appellant's *Atkins* claim fails on the merits because he chose to rest upon a proffer that does not prove the claim, and his refusal to produce additional evidence binds him to the obviously inadequate pre–*Atkins* record he relied upon. Instead, it suggests that this Court overlook this logical conclusion and remand this matter so that a bench *Atkins* hearing can be held, thus ensuring that the state court serves its primary role as the initial forum for constitutional claims, and avoiding the initial federal determination of *Atkins* that appellant seems to prefer.

██ If the defense strategy and obduracy were all we had here, we might be inclined to deny remand. After all, salutary Pennsylvania procedural doctrine should not be defeated by attorney manipulations or even by concerns with subsequent federal habeas corpus review. But there is more. The indeterminate procedural posture of this case is at least in part a product of the PCRA court's apparent indecision. At the hearing, the court could have passed upon the Commonwealth's argument that the *Atkins* jury trial issue was waived based on appellant's belated motion; or, the court could have explicitly passed upon appellant's request to proceed before a jury. If the court had specifically ruled on the jury trial question in the Commonwealth's favor, the court should then have proceeded to rule upon the anticipatory defense request for interlocutory review. Explicit denial of that request, in turn, would have conveyed to appellant in unmistakable terms that, absent a request for interlocutory review in this Court, a

refusal to abide by the determination on the jury request and "rest" instead upon obviously inadequate "papers" would result in a waiver of any future opportunity to present additional evidence relating to *Atkins*.

Unfortunately, the PCRA court did not take this bull by the horns, and did not put appellant to the appropriate, explicit choice. Instead, notwithstanding its initial indication that the jury request was both preserved and denied, the court delayed its definitive ruling until its later opinion and allowed appellant to "rest on the papers." This determination was at best ambiguous concerning whether appellant's obduracy was being viewed as a waiver. In its later opinion, the court focused solely on "those papers," inevitably rejected the *Atkins* claim on that "record," and held that the jury issue became moot.

This analysis was not a clear or satisfactory resolution. First, the court's decision to allow appellant to "rest on the papers" to prove an *Atkins* claim was inconsistent with our existing jurisprudence. As discussed previously, the *Miller* opinion clearly provided that a party could not simply rest upon the existing record from a non–*Atkins* proceeding, but had to produce relevant *Atkins* evidence to actually establish mental retardation. Moreover, the court's finding of mootness on the jury trial question does not follow at all from the finding that the pre–*Atkins* record was insufficient. Logically, the jury trial issue was distinct from, and preliminary to, the *Atkins* question. The PCRA court essentially allowed the jury trial question to go unresolved, did not explicitly put appellant to the evidentiary choice and consequent waiver he should have faced if it was unpersuaded by the jury trial claim (as it should have been under existing authority), and then passed upon what amounted to a faux *Atkins* claim that not only was meritless, but also meaningless, since appellant, who was granted a hearing, chose not to proffer any evidence targeted to *Atkins*.

In these circumstances, we will not hold that appellant has waived any entitlement to an *Atkins* remand for the bench evidentiary hearing he refused below. Our holding in this regard should not be read as approval of the defense tactics

below; rather, it should serve as a caution to PCRA courts in capital cases to be aware of the potential manipulations that may be forwarded in these high stakes cases, and to take clear control of the proceedings before them. *Cf. Banks, supra.*

Obviously, in requesting a remand, the Commonwealth does not dispute that, on the existing record which includes the proffers for purposes of this serial PCRA petition, an evidentiary hearing is warranted to ultimately determine appellant's *Atkins* claim. Since that point is undisputed, we will remand the matter.

■ We turn now to the remaining question, *i.e.*, appellant's procedural claim of a federal constitutional entitlement to have a jury decide his *Atkins* claim. Preliminarily, we recognize that the Commonwealth is correct that the identity of the appropriate *Atkins* factfinder presumptively is governed by the Rules of Criminal Procedure, which provide that a PCRA hearing shall be before a judge. Pa.R.Crim.P. 908(D)(1). However, while the rule clearly provides that the PCRA judge shall determine all material issues, the rule cannot trump a Sixth Amendment right to a jury trial, if indeed one exists, and so it is this constitutional question that we now address.

In *Ring,* the U.S. Supreme Court declared that capital defendants, like their non-capital counterparts, had a right to a "jury determination of any fact on which the legislature conditions an increase in their maximum punishment." 536 U.S. at 589, 122 S.Ct. 2428. Specifically, in *Ring,* a jury convicted appellant Ring of first-degree felony murder in Arizona state court. Under the Arizona statutory scheme, the maximum penalty based upon the jury's guilty verdict was life in prison. The statute authorized a penalty of death only if further findings of fact were made, *i.e.*, the existence of one or more aggravating factors. The Arizona statute provided that such further findings were to be made by the judge, who, in that case, found the existence of two aggravating factors. The question before the Court was whether Arizona's procedure, which permitted a judge and not a jury to determine the existence of aggravating factors, was constitutional under the Sixth Amendment.

Following its then-recent decision in *Apprendi*, the Court pointed out that the "dispositive question" was whether the State makes an increase in a defendant's authorized punishment contingent on a finding of fact. *Ring*, 536 U.S. at 602, 122 S.Ct. 2428. "A defendant may not be expose[d] ... to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." *Id.* (citing *Apprendi* at 483, 120 S.Ct. 2348). Applying these principles to Ring's case, the Court concluded that "[i]n effect, 'the required finding [of an aggravating circumstance] expose[d] Ring to a greater punishment than that authorized by the jury's guilty verdict.' " *Id.* at 604, 122 S.Ct. 2428. The Court also suggested that an aggravating factor was similar to an element of the crime. *Id.* at 607, 122 S.Ct. 2428. For these reasons, the Court held that "[b]ecause Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense, the Sixth Amendment requires that they be found by a jury.' " *Id.* at 609, 122 S.Ct. 2428 (citations omitted).[9]

Two years later, the Court confronted the question of whether the rule in *Ring* applied retroactively in federal habeas corpus proceedings in *Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), another state capital case arising from Arizona. In *Summerlin*, the Court first discussed the distinction between substantive and procedural rules, explaining that the former generally applied retroactively as they "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him." *Id.* at 352, 124 S.Ct. 2519.[10] On the other hand, as a general proposition, procedural rules do not apply retroactively since "they do not produce a class of persons convicted of conduct the law does not make criminal, but

9. In reaching this conclusion, the Court overruled its earlier decision in *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d· 511 (1990).

10. Under this test, it is easy to see why the rule announced in *Atkins* is substantive.

merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Id.* Therefore, only new procedural rules amounting to "watershed rules of criminal procedure" warrant retroactive effect. *Id.*

Following this primer on retroactivity, the *Summerlin* Court turned to the issue of whether the right to a jury trial announced in *Ring* was substantive or procedural in nature. The Court first explained that "rules that regulate only the manner of determining the defendant's culpability are procedural." *Id.* at 353, 124 S.Ct. 2519. Applying this standard, the Court concluded that *Ring*'s holding was procedural, since it merely allocated decision-making and did not alter the range of conduct a state may criminalize or alter the penalty imposed. Furthermore, the Court determined that the rule announced in *Ring* did not amount to a "watershed rule." Accordingly, the Court concluded that the new rule in *Ring* did not apply retroactively for purposes of federal collateral review of state court proceedings.

Finally, in a *per curiam* order issued in 2005, the U.S. Supreme Court held that the Ninth Circuit erroneously ordered the Arizona state courts to conduct an *Atkins* mental retardation hearing in front of a jury. *Schriro v. Smith,* 546 U.S. 6, 126 S.Ct. 7, 163 L.Ed.2d 6 (2005). Therein, the Court explained:

> *Atkins* stated in clear terms that "we leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences." States, including Arizona, have responded to that challenge by adopting their own measures for adjudicating claims of mental retardation. While those measures might, in their application, be subject to constitutional challenge, Arizona had not even had a chance to apply its chosen procedures when the Ninth Circuit pre-emptively imposed its jury trial condition.

*Id.* at 7–8, 126 S.Ct. 7.

This is the governing federal case law concerning *Ring.* In arguing that *Ring* must apply to *Atkins* hearings on collateral

review, appellant tries to squeeze the square peg that is the Pennsylvania capital sentencing construct into the round hole that was the Arizona scheme. But, unlike Arizona, Pennsylvania does not leave the finding of aggravating circumstances and the prospect of a capital sentence to a judge; the jury passes upon the aggravators. Nevertheless, appellant poses Pennsylvania's capital sentencing schemes as the same. He argues that, following *Atkins*, the maximum penalty for first-degree murder in Pennsylvania supposedly is life in prison and only those defendants who are not mentally retarded are subject to a greater penalty of death. The Commonwealth disagrees, pointing out that *Ring* and *Smith* made clear that the Sixth Amendment right to a jury determination does not apply to an *Atkins* claim. Furthermore, the Commonwealth cites to *Summerlin*, and notes that appellant's *Ring* claim is a non-starter on collateral attack, since *Summerlin* held that the rule in *Ring* does not apply retroactively to cases, like appellant's, where the judgment of sentence became final long before the High Court's pronouncement of the new rule in *Ring*.

The issue before this Court requires us to determine whether the Sixth Amendment, as construed by the U.S. Supreme Court in *Ring*, requires a jury to make the relevant factual determination on an *Atkins* claim that is raised in post-conviction proceedings. (This is not the same question as the inquiry whether *Atkins* requires a jury in capital cases proceeding to trial after *Atkins* was decided.) Our specific institutional task, when implementing constitutional commands from the High Court in an instance such as this, is to attempt to predict how the High Court would resolve this federal question, in the absence of a controlling and definitive resolution from that Court. There is obvious facial appeal in the Commonwealth's position that the simplest answer here is commanded by the collateral posture of the case and principles of retroactivity: *i.e.,* whatever scope *Ring* may have going forward, since it is a procedural rule, it plainly does not operate retroactively to require a jury when an *Atkins* claim is raised after the fact. And we are aware that the few courts

that have considered the question in the post-conviction *Atkins* setting have concluded that *Ring*'s new rule cannot apply to *Atkins* proceedings that arise during the post-conviction stage citing, in relevant part, concerns of retroactivity. *See In re Johnson,* 334 F.3d 403 (5th Cir.2003); *Head v. Hill,* 277 Ga. 255, 587 S.E.2d 613 (2003); *Ex parte Briseno,* 135 S.W.3d 1 (Tex.Crim.App.2004); *see also Walker v. True,* 399 F.3d 315 (4th Cir.2005). However, there is a complexity here, deriving from the very nature of an *Atkins* claim, that makes us question whether ordinary retroactivity principles are entirely apt, or whether they should apply in the same way.

As we have noted above, the *Ring* jury trial claim is cognizable on this serial PCRA petition not as a stand-alone *Ring* claim, but because it raises a procedural question sufficiently related to an *Atkins* death-eligibility claim over which we have jurisdiction pursuant to § 9545(b)(1)(iii). Indeed, given the timeliness and serial petition restrictions of the PCRA, and the fact that the U.S. Supreme Court has held that *Ring* is a procedural rule and does not operate retroactively, a pure *Ring* claim here would be time-barred. *See* 42 Pa.C.S. § 9545(b)(1)(iii). The *Atkins* context of this *Ring* claim, thus, is integral.

Assertion of a colorable *Atkins* claim will trigger a post-conviction hearing so long as the jurisdictional time requirements are met and the petitioner can demonstrate that there is a genuine question of material fact regarding his or her mental retardation. A post-conviction *Atkins* claim, however, is not a typical new rule claim. Most new rules look back to the proceeding producing the judgment of sentence, and if that proceeding is deficient under the new rule, and the new rule applies retroactively, the judgment will be undone and a new proceeding awarded. Not so with a collateral *Atkins* claim. By definition, there is no prior mental retardation/death eligibility decision, wrapped into the judgment of sentence, to be revisited under a new substantive rule. Instead, a post-conviction *Atkins* claim raises a new claim that was not contemplated, much less adjudicated, at the time of the earlier proceedings and judgment. Thus, properly under-

stood, the *Ring* question presented in the *Atkins* setting is whether the defendant has the procedural right to a jury at his **prospective** *Atkins* hearing. Such a scenario does not fit so neatly into traditional retroactivity doctrine.

In answering this question, we find further guidance by looking to the High Court's new rule jurisprudence in the line of cases deriving from *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), which articulates another core restriction upon the operation of "new" constitutional rules. Justice O'Connor's plurality decision in *Teague* is acknowledged as setting forth the legal framework for a principled approach to deciding when a pronouncement of law should be given effect to cases pending on collateral review, *i.e.*, when a court-fashioned rule properly may "retroactively" apply to those cases in which the judgment of sentence has become final.[11] In *Teague*, the Court confirmed the general rule of non-retroactivity of new procedural rules. The Court then explained that a rule is considered "new" when the result "was not dictated by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301, 109 S.Ct. 1060. Speaking for the Court in *Danforth v. Minnesota*, 552 U.S. 264, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008), Justice Stevens further clarified the practical ramifications of the *Teague* inquiry when he noted that, "What we are actually determining when we assess the 'retroactivity' of a new rule is not the temporal scope of a newly announced right, but whether a violation of the right that occurred prior to the announcement of the new rule will entitle a criminal defendant to the relief sought." *Id.* at 1035 & n. 5.

■ The twist in the case *sub judice* is that *Teague* and *Danforth* contemplate scenarios in which the new rule inquiry involves a rule that would operate upon and affect a judgment already rendered, *i.e.*, it will be retroactively applied to alter a final judgment of sentence. Indeed, the underpinning of the

11. Although the lead opinion in *Teague* was only supported by four members of the Court, the *Teague* rule was affirmed and applied in a majority decision shortly after it was announced in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

retroactivity restriction emanates, in part, from *Teague*'s concern with restoring some measure of respect for the finality of state court criminal judgments. *See Danforth*, 128 S.Ct. at 1041 (noting that one justification for general rule of nonretroactivity (on collateral proceedings) is because of comity and respect for finality of state convictions).[12] This Court has looked to *Teague* principles when confronted with questions of retroactivity in the post-conviction setting,[13] but not in a circumstance like *Atkins*, which may require a more sophisticated analysis.

In the *Atkins* arena, the overarching new constitutional rule is the Eighth Amendment-derived substantive rule precluding the execution of mentally retarded individuals convicted of capital crimes. That rule contemplates and requires revisiting some final judgments, but not in the same way as other new rules. If a death-sentenced prisoner is found to be mentally retarded in his first and only *Atkins* hearing, there will be no new penalty hearing; and if he is not found to be mentally retarded, there will be no new penalty hearing, for the judgment of death will remain intact.[14] Thus, the current request

12. "Federalism and comity considerations are unique to *federal* habeas review of state convictions." *Id.* at 1041 (emphasis in original). The Court added that, "[i]t is thus abundantly clear that the *Teague* rule of nonretroactivity was fashioned to achieve the goals of federal habeas while minimizing federal intrusion into state criminal proceedings. It was intended to limit the authority of federal courts to overturn state convictions—not to limit a state court's authority to grant relief for violations of new rules of constitutional law when reviewing its own State's convictions." *Id.*

13. *See Commonwealth v. Spotz*, 587 Pa. 1, 896 A.2d 1191, 1243–44 (2006); *Commonwealth v. Hughes*, 581 Pa. 274, 865 A.2d 761, 780 (2004); *Commonwealth v. Blystone*, 555 Pa. 565, 725 A.2d 1197, 1202–03 (1999).

14. This point was well made in a dissenting opinion in the *Briseno* case, as follows:

Post-conviction *Atkins* claims do not allege error in the process used to obtain the convictions or sentences, so there is no issue of reviewing the correctness of procedures that did not follow procedural rules that had not yet been annunciated.... Involving a jury to determine the *Atkins* claims does not threaten the finality of the final conviction any more than does having a trial court determine the *Atkins* claim without a jury. Because these claims are being addressed for the

for a jury trial does not implicate the same retroactivity and *Teague* values as in more common new rule scenarios: although *Atkins* may require undoing a final judgment in an appropriate case, it does not reopen a proceeding that has already occurred, but contemplates an entirely different type of a hearing that has yet to occur and which has been deemed constitutionally necessary because it implicates death eligibility.

For these reasons, we are not entirely certain, under existing law, that the U.S. Supreme Court would hold that a *Ring* claim, raised in a collateral *Atkins* proceeding, is an automatic non-starter premised upon new procedural rule retroactivity principles.[15] Given this uncertainty, as well as the importance of the question for the administration of criminal justice in Pennsylvania capital cases, and the fact that the underlying question is fully briefed and ready for decision, we will turn to the merits of appellant's claim of an entitlement to an *Atkins* jury.[16]

first time, there is no reason to proceed under rules as they were understood at the time the conviction became final.

*Ex parte Briseno*, 135 S.W.3d at 20 (Holcomb, J. dissenting). Notably, Judge Holcomb later reconsidered this position in light of *Summerlin*, see *Hall v. State*, 160 S.W.3d 24, 44–45 (Tex.Crim.App.2004) (Holcomb, J. dissenting). Nevertheless, his reasoning is instructive because it elucidates the unique nature of *Atkins* claims raised on collateral review.

15. We realize that, even though an *Atkins* hearing is a new proceeding, by requiring the States conduct such a proceeding before a jury—premised upon yet another new rule like *Ring*—places a significant new burden upon the State in terms of cost, time and interference with State prerogatives. Indeed, this may well be reason enough to hold that the new procedural rule in *Ring* should not apply. However, as noted in text, given the uncertainty and complexity, we will reach the merits.

16. We note that other jurisdictions considering *Ring/Atkins* jury trial claims have declined to rule on the retroactivity issue in favor of reviewing the substantive Sixth Amendment right. *See, e.g., Walker,* 399 F.3d at 325 (after noting that defendant contended that *Summerlin* is inapplicable in context of *Atkins* hearing, since he was "not seeking to vacate a factual decision already made by a judge in favor of having the factual determination made by a jury," court opted to turn to jury trial right under *Ring* rather than definitively ruling on retroactivity question).

We now hold that *Ring* does not require a jury trial in such instances. The U.S. Supreme Court signaled as much in its per curiam order in *Smith*. Additionally, under the current Pennsylvania statutory scheme, a lack of mental retardation is not an element or the functional equivalent of an element of the capital sentence, since it does not relate to the facts surrounding the commission of the crime nor does it relate to the defendant's mental state at the time he committed the crime. Rather, death is the statutorily authorized penalty for that class of persons who are found guilty of first-degree murder, the circumstances of which involve certain aggravating factors that are found, **by a jury,** beyond a reasonable doubt. Certainly, these statutory aggravating factors can be offset by the finding of mitigating factors, but that does not change the bedrock fact that the Pennsylvania penalty scheme sets the maximum penalty at death for capital defendants who meet both criteria—first-degree murder and one or more of certain statutory aggravating circumstances. The statute is not written in the negative, as appellant would have it. It does not say that a death verdict becomes available only after the jury finds that the defendant is not mentally retarded.[17] That limit is entirely a function of an external factor: *Atkins,* a federal judicial decision overruling prior precedent, which operates as an external restriction upon existing state prerogatives, by "exempting" certain members of that otherwise eligible class from the imposition of the death penalty because of Eighth Amendment concerns. The decision did nothing to change Pennsylvania's statutory scheme for determining that class of defendants who meet the statutory criteria to render them eligible for the death penalty. And, in Pennsylvania, those aggravating factors are submitted to a jury.

Therefore, we hold that the Sixth Amendment right to a jury trial as defined in *Ring* does not apply to appellant's post-

17. As one court has observed, *Ring* was concerned with those facts that **increased** the statutorily authorized penalty for first-degree murder from life in prison to death and "an increase in a defendant's sentence is not predicated on the outcome of mental retardation determination, only a decrease." *Walker,* 399 F.3d at 326. We agree. *Atkins* does not easily fit within the *Ring* paradigm.

conviction *Atkins* claim.[18]

■ Our conclusion is consistent with the near unanimous consensus of federal and state courts that have considered this issue. *See Walker, supra; In re Johnson,* 334 F.3d 403 (5th Cir.2003); *State v. Grell,* 212 Ariz. 516, 135 P.3d 696 (2006); *People v. Jackson,* 45 Cal.4th 662, 88 Cal.Rptr.3d 558, 199 P.3d 1098 (2009); *Arbelaez v. State,* 898 So.2d 25 (Fla.2005); *Head v. Hill,* 277 Ga. 255, 587 S.E.2d 613 (2003); *Pruitt v. State,* 834 N.E.2d 90 (Ind.2005); *Bowling v. Commonwealth,* 163 S.W.3d 361 (Ky.2005); *Russell v. State,* 849 So.2d 95 (Miss.2003); *State v. Flores,* 135 N.M. 759, 93 P.3d 1264 (2004); *State v. Were,* 118 Ohio St.3d 448, 890 N.E.2d 263 (2008); *State v. Laney,* 367 S.C. 639, 627 S.E.2d 726 (2006); *Howell v. State,* 151 S.W.3d 450 (Tenn.2004); and *Briseno, supra.* Generally, those states that have recognized a right to a jury determination of mental retardation have done so by statute. *See* Ark.Code Ann. § 5–4–618 (2006); Conn. Gen.Stat. § 53a–46a (1997); La.Code Crim. Proc. Ann. art. 905.5.1 (2003); N.C. Gen.Stat. Ann. § 15A–2005(e) (2001); and Va.Code Ann. § 19.2–264.3:1.1(c) (2003). And, the few states that have recognized such a right by judicial decision have not done so on the basis that the right is required by the Sixth Amendment, but have done so as a matter of policy or because of an extant state statute. *See, e.g., New Jersey v. Jimenez,* 188 N.J. 390, 908 A.2d 181, 192 (2006) (setting forth comprehensive New Jersey procedure for *Atkins* claims under its "general supervisory authority over trial administration"); *Blonner v. State,* 127 P.3d 1135 (Okla.Crim.App.2006) (directing jury trial on issue of mental retardation to be conducted pursuant to

18. Appellant's reliance on the position that the Commonwealth forwarded a request for a jury trial on an *Atkins* claim in *DeJesus,* 546–547 CAP, is unpersuasive. First, there is no support in Pennsylvania law for the proposition that a position taken in one case is binding in a different case. Second, the PCRA court opinion in *DeJesus* makes no mention of the issue. Third, even if the Commonwealth raised that issue before the *DeJesus* PCRA court, it does not forward the issue on appeal to this Court. And, finally, the question posed on this appeal is one of federal constitutional law, the outcome of which does not turn upon the parties' agreement or concession, or their litigation positions in other cases. *See, e.g., Commonwealth v. Collins,* 564 Pa. 144, 764 A.2d 1056, 1058 n. 4 (2001).

dictates of Okla. Const. art. II, § 19); *Burns v. Warden*, 269 Va. 351, 609 S.E.2d 608 (2005) (explaining that jury trial may be necessary for purposes of *Atkins* claim under Virginia statute). Therefore, contrary to appellant's arguments, there are virtually no states or federal jurisdictions which conclude that a Sixth Amendment right to a jury trial exists for purposes of an *Atkins* claim in post-conviction proceedings.[19]

For the reasons stated herein, we remand this matter to the PCRA court to hold a bench evidentiary hearing on appellant's *Atkins* claim and in compliance with our standards as announced in *Miller, supra.*[20]

Justices SAYLOR, EAKIN, BAER, TODD and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

Justice GREENSPAN concurs in the result.

Justice SAYLOR, concurring.

I join the well-reasoned majority opinion in the landscape of Pennsylvania law as it now exists. I merely note that, left to my own devices, I would treat the present category of claims of death ineligibility under traditional principles of state habeas corpus law, for the reasons stated in my dissent in *Com-*

**19.** We do not address appellant's claim pursuant to *Danforth* that this Court can go further than the High Court and apply *Ring* to our own post-conviction proceedings as a matter of state law. Appellant did not raise the issue below, and, as such, it is waived. Pa.R.A.P. 302. Moreover, this claim is distinct from appellant's central claim—the 6th and 14th Amendments command a jury trial—and is not cognizable under PCRA, as it does not involve death eligibility, does not fit within any exception to the jurisdictional time-bar under 42 Pa.C.S. § 9545(b)(1), and, in any event, was not raised within 60 days of the date it could have been presented as required by 42 Pa.C.S. § 9545(b)(2).

**20.** We decline the Commonwealth's invitation to remove the Federal Community Defender. Again, although we do not condone the defense strategy below, we leave it to the guiding hand of the PCRA court to keep the proceedings focused on the single cognizable question before it, and not to allow the strategies of either party to derail or unduly delay matters.

*monwealth v. Steele,* 599 Pa. 341, 434–35, 961 A.2d 786, 842 (2008) (Saylor, J., dissenting).